688 F.2d 93
 223 U.S.App.D.C. 1
 Willie STEVENSON, Petitioner,
v.
LINENS OF THE WEEK, Liberty Mutual Insurance Company, and
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.*
 No. 81-1894.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 17, 1982.
Decided Aug. 13, 1982.
 
 Petition for Review of an Order of the Benefits Review Board.
 Michael V. Kowalski, Washington, D. C., for petitioner.
 Donald P. Maiberger, with whom Bruce F. Robertson, Washington, D. C., was on the brief, for respondents.
 
 
 1
 Before MIKVA, Circuit Judge, McGOWAN, Senior Circuit Judge, and BRYANT,** Senior District Judge for the District of Columbia.
 
 
 2
 Opinion for the Court filed by Senior District Judge BRYANT.
 
 BRYANT, Senior District Judge:
 
 3
 We are asked to review the decision of the Benefits Review Board (BRB) affirming the denial of petitioner Willie Stevenson's claim for temporary total benefits under the Longshoremen's and Harbor Workers' Compensation Act (the Act).[1] The Administrative Law Judge (ALJ) denied Stevenson's claim, finding that the employer had neither written notice of Stevenson's injury, pursuant to 33 U.S.C. §§ 912(a) and (b), nor actual knowledge, pursuant to § 912(d)(1). The Benefits Review Board affirmed the ALJ's finding that the employer had no actual knowledge of Stevenson's purported injury, with one member dissenting.
 
 
 4
 We reverse the decision of the Benefits Review Board affirming the ALJ's determination. Given Stevenson's specific allegations concerning notice to his employer, the ALJ's finding that Stevenson's employer did not know about Stevenson's injury was not supported by evidence sufficient to overcome the statutory presumption of notice. Moreover, the employer's receipt of doctors' reports concerning Stevenson's medical condition should have alerted the employer to investigate its possible liability.
 
 I. The Facts
 
 5
 Willie Stevenson worked as a laundry worker at Linens of the Week (Linens). Joint Appendix (JA) 81. His duties included unloading trucks and moving heavy objects. Id. On September 18, 1978, Stevenson injured his back in a work-related accident. JA 68. Stevenson stopped working for a few weeks, and was compensated by Linens. JA 69.
 
 
 6
 On November 24, 1978, Stevenson again injured his back. JA 84. As a result, he stopped work at Linens on December 14, 1978. JA 98-99. Stevenson sought temporary total disability benefits for the period December 15, 1978 to May 26, 1979 on account of his November 24 injury. JA 4. At the hearing before the ALJ, Stevenson and Linens disagreed whether Stevenson's November injury occurred at work and whether Linens had notice of the injury prior to receipt of a May 1979 letter from Stevenson's attorney.
 
 
 7
 Stevenson testified at the hearing that when he returned to work following his September injury, he told a supervisor, Mr. Russell, that he still had back pain. JA 83. As a result, Stevenson was given light work to do. JA 92. Stevenson stated that on November 24, he slipped on Linens' washroom floor. JA 84. Stevenson asserted that Leroy Lane, the man to whom Stevenson said he had been instructed to report that day, saw the accident, recommended that Stevenson see a doctor, and told Stevenson that "everything would be taken care of." Id. Stevenson stated that he left in the middle of his workday to see a doctor. Id.
 
 
 8
 Stevenson further testified that on November 24 or 25 he spoke with Linens' manager, Leo Coulter, to tell Coulter about the injury and ask whether Lane had reported it. JA 84-85. Coulter told Stevenson that everything was being taken care of. JA 85. Although Stevenson returned to work on November 25, he stated that he frequently complained of back pains to his area supervisor, Russell, and Russell advised him to "take it easy." JA 98. On December 14, 1978 Stevenson consulted a new doctor, who instructed Stevenson not to return to work. Id. Stevenson testified that upon return from the doctor's office, he told Ida Eckstein, the Linens secretary responsible for handling accident claims, that doctor's orders required that he quit work. JA 99.
 
 
 9
 Linens denies that Stevenson's November 24 injury occurred at work; and claims that even if it occurred at work, Linens had no notice of the injury. James Luckett, Linens' Vice President and Director of In-Plant Operations, was Linens' only witness at the hearing before the ALJ. Luckett testified that on the day Stevenson alleged he sustained his back injury, he in fact worked a full day at Linens. JA 138.[2] Luckett stated that Leroy Lane was a washroom helper, not a supervisor, and that Lane had no authority to direct injured employees to seek medical attention. JA 127. Luckett said that Stevenson had instructions to report accidents to his immediate supervisor, James Belton. JA 129.
 
 
 10
 Luckett denied that he, Coulter, Eckstein, Belton or any other Linens manager had timely notice of Stevenson's claimed November 24 work-related injury.[3] Luckett's denial was based mainly on Stevenson's compensation folder and absentee record, or time card. According to Luckett, if an employee or his supervisor advised Eckstein of an injury, she would immediately fill out an accident report, send the report to Linens' insurer, and file a copy of the report in the employee's compensation folder. JA 130. Likewise, if an employee stopped work at Linens because of an injury, that fact would be reflected in the employee's file. JA 129. Stevenson's file did not contain reports of the November 24 injury. Id.
 
 
 11
 However, Stevenson's absentee record did show a series of "A's," standing for "accident at plant," for the days Stevenson was out in September and October and also for December 18-22 and December 25-29. JA 204. Luckett said that on December 18, Stevenson came to pick up his check and told Coulter that "he wasn't coming back to work until his back was better." JA 134. Stevenson's absentee record was subsequently marked with the "A's," which, Luckett contended, would have been interpreted by most Linens personnel as a reference to the September accident. JA 133.
 
 
 12
 Luckett acknowledged that in late 1978, Linens received a "Supplemental Report" dated November 27, 1978 from the Union Market Clinic saying that Stevenson fell on November 24 and re-injured his back. JA 135. But that report, and a report dated December 18, 1978, listed the date of original injury as September 18, 1978. JA 195.
 
 
 13
 Following the hearing on Stevenson's claim, the ALJ denied Stevenson temporary total disability benefits. The ALJ found that Stevenson had not given Linens or the deputy commissioner written notice of his injury, as required by 33 U.S.C. §§ 912(a) and (b). JA 55. The ALJ also determined that § 912(d) did not apply to Stevenson because Linens had no knowledge of a November 24 work-related injury, and was prejudiced by its lack of knowledge. JA 55-56. The ALJ determined that since Lane was a laundry room helper, not a supervisor, notice to Lane was ineffective. JA 55. The ALJ did not accept Stevenson's testimony that he told Coulter and Eckstein about the injury; instead the ALJ found that had the injury been reported, a business record of the accident would have been made. JA 56. Finally, the ALJ held that the November 27 Union Market Clinic Supplemental Report did not constitute notice because the report did not indicate that Stevenson's accident occurred at work and caused incapacitating injury. JA 55-56. The Benefits Review Board affirmed the ALJ's decision, with Judge Miller dissenting.[4]
 
 II. Burden of Proof
 
 14
 Under the Act, the Benefits Review Board was bound to regard the ALJ's findings of fact as conclusive if supported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3). This court must correct the BRB's errors of law and determine if the BRB has adhered to its proper scope of review. We must also conduct an independent review of the record to determine if the ALJ's findings are supported by substantial evidence. Avondale Shipyards, Inc. v. Vinson, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980). See Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs, 606 F.2d 1324, 1326 (D.C.Cir.1979), rev'd on other grounds, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).
 
 
 15
 Sections 912(a) and (b) require that the injured employee notify the employer in writing within thirty days of injury. Section 912(d), however, provides that: "Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice...." Section 920 says: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary-... (b) That sufficient notice of such claim has been given...."
 
 
 16
 Linens contends that the § 920(b) presumption applies only to §§ 912(b) and (c), and not to § 912(d).[5] Linens asserts that § 920(b)'s reference to "sufficient notice" has meaning only with respect to those sections which set forth the technical requirements for notice, i.e., §§ 912(b) and (c). Since § 912(d) speaks only of "failure to give such notice" and "knowledge" of injury in the absence of notice, a presumption regarding "sufficient notice" cannot apply to that section. See Peterson v. Washington Metropolitan Area Transit Authority, 13 BRBS 891, BRB No. 78-610 (June 11, 1981) (Smith, J., concurring) (§ 920(b) presumption does not apply to § 913).
 
 
 17
 Linens' narrow parsing of the statute would drastically reduce the benefit of the § 920(b) presumption. Section 912(d)'s "actual knowledge" provision is designed to protect claimants who have failed to comply with the technical requirements of §§ 912(b) and (c). If the § 920(b) presumption were limited to §§ 912(b) and (c), it would add to the § 912(d) protection only the requirement that employers provide substantial evidence for an inadequate notice showing before the burden of proving actual notice devolved upon the claimant.
 
 
 18
 It is well established that the Act "must be liberally construed in conformance with its purpose and in a way which avoids harsh and incongruous results." Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953). "Doubts, including the factual, are to be resolved in favor of the employee ...." Friend v. Britton, 220 F.2d 820, 821 (D.C.Cir.), cert. denied, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1955). It is reasonable to assume that the number of claimants who acknowledge failure to provide written notice, but still allege actual knowledge, is far greater than the number of claimants who provide inadequate written notice. In the few cases which present issues of inadequate written notice, requiring the employer to prove inadequate notice by substantial evidence would hardly create a significant burden. Construing § 920(b) to apply only to §§ 912(b) and (c) would effect the remedial purpose of the Act in only a minor way with respect to but a handful of claimants.
 
 
 19
 Our mandate to construe the Act liberally compels a different conclusion. Section 920(b) creates a presumption that, in the absence of substantial evidence to the contrary, the employer or carrier had knowledge of the injury or death and was not prejudiced by the failure to give written notice. Avondale Shipyards, Inc. v. Vinson, 623 F.2d at 1120; Duluth, M. & I. R. Ry. Co. v. U. S. Department of Labor, 553 F.2d 1144, 1148 (8th Cir. 1977). See Butler v. District Parking Management Co., 363 F.2d 682 (D.C.Cir.1966). The BRB's failure to recognize the full extent of the § 920(b) presumption was error.[6]
 
 III. Review of the Evidence
 
 20
 The § 920(b) presumption operates in Stevenson's favor unless and until Linens presents substantial evidence showing that it had no knowledge of Stevenson's work-related injury. See Hensley v. Washington Metropolitan Area Transit Authority, 655 F.2d 264, 267 (D.C.Cir.1981), cert. denied, --- U.S. ----, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982). The beneficent purposes and humanitarian nature of the Act must be borne in mind when deciding whether the employer has presented "substantial" evidence; thus doubtful questions, including factual ones, must be resolved in favor of claimants. Id.; Wheatley v. Adler, 407 F.2d 307, 313-314 (D.C.Cir.1968) (en banc). "Applying this approach, this court has often found it necessary to reverse orders which are based on evidence too insubstantial to override the statutory presumption; We 'will not sustain the administrative findings merely because they are substantiated by some isolated evidence.' Friend v. Britton, supra, 220 F.2d at 821. See, e.g., Swinton v. Kelly, supra, 554 F.2d at 1085 n.61 (collected cases decided in this circuit)." Hensley, 655 F.2d at 268.
 
 
 21
 In this case, Linens submitted three items of evidence to rebut the statutory presumption of knowledge: Luckett's testimony that he did not have timely notice of Stevenson's injury, and that he did not know of any supervisory personnel who had such notice; the absence of a November 24 work-related accident report in Stevenson's compensation folder; and the absence of a reference to a November 24 injury in Stevenson's absentee record. Clearly, Luckett's oral testimony cannot alone override the statutory presumption; the record does not demonstrate that Luckett would know about notice given to other supervisory personnel if that notice were not subsequently reflected in Stevenson's compensation folder or absentee record. However, relying on the principle that the absence of an entry in a business record is probative of the non-occurrence of the event in question, see F.R.E. 803(7), the ALJ determined that Linens' compensation folder and absentee record constitute evidence of lack of notice of Stevenson's injury. While we may have drawn different inferences from Luckett's testimony about these records,[7] we are not in a position to dispute the ALJ's determination that it did constitute evidence pointing toward lack of notice. See Del Vecchio v. Bowers, 296 U.S. 280, 287, 56 S.Ct. 190, 193, 80 L.Ed. 229 (1935). We must decide, however, whether it is enough to constitute the "substantial evidence" required to support a finding that Linens did not have notice from Stevenson of a work-related injury.
 
 
 22
 Negative evidence may in some circumstances be informative. Wheatley v. Adler, 407 F.2d at 313. Negative evidence adequate to overcome the § 920 statutory presumptions, however, must be both specific and comprehensive. See Swinton v. Kelly, 554 F.2d 1075, 1083 (D.C.Cir.), cert. denied, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976) (§ 920(a) presumption may be dispelled by circumstantial evidence specific and comprehensive enough to sever the potential connection between a particular injury and a job-related event); Wheatley, 407 F.2d at 313. "(T)he quantum and type of evidence required of the employer corresponds to the specificity of the claimant's evidence and allegations." United States Industries/Federal Sheet Metal, Inc. v. Director, Office of Workers' Compensation Program, --- U.S. ----, 102 S.Ct. 1312, 1319-20 n.3, 71 L.Ed.2d 495 (1982) (Brennan, J., dissenting).
 
 
 23
 Stevenson was under no obligation to establish a prima facie case for actual knowledge. Nevertheless, Stevenson came forth with four specific allegations about the time, place, and manner of notification to the employer: he said he spoke to Lane, an eyewitness, at the scene of the accident;[8] he said he spoke to Coulter, either the day of the accident or the following day; he said he made known to Russell in the weeks after the accident his inability to do heavy work; and he said he told Eckstein about the accident on the day he stopped work. The Act places upon the employer both the burden of production and the risk of nonpersuasion. Once made, therefore, Stevenson's allegations-whether or not believed by the ALJ[9]-placed upon Linens a correspondingly high burden to rebut the notification presumption with proof directly responsive to Stevenson's allegations.[10] Linens did not present such proof. In light of Stevenson's allegations, we conclude that the negative evidence Linens proffered did not rise to the level of "substantial evidence" necessary to overcome the § 920(b) presumption.
 
 IV. Linens' Duty to Investigate
 
 24
 An alternative ground for our decision arises from a consideration of the Union Market Clinic Supplemental Reports. The § 912(d) knowledge requirement is fulfilled if the employer knows of the injury and has facts that would lead a reasonable man to conclude that compensation liability is possible, and that he therefore ought to investigate the matter further. Butler v. District Parking Management Co., 363 F.2d at 684; Leyden v. Capitol Reclamation Corp., 2 BRBS 24, 30, BRB Nos. 74-226, 74-226A (1975), aff'd mem., 547 F.2d 706 (D.C.Cir.1978). Aggravation of a pre-existing condition may constitute a compensable accidental injury under the Act. Wheatley v. Adler, 407 F.2d at 312; Howell v. Einbinder, 350 F.2d 442, 443 (D.C.Cir.1965).
 
 
 25
 Linens knew that Stevenson had injured his back in September. It knew about the physical nature of Stevenson's duties; or, alternatively, about the necessity that Stevenson avoid heavy work lest he re-injure his back. Linens knew that Stevenson was under doctor's care. It knew that Stevenson was often absent from work because of back problems, at least during the month of October. And it knew that Stevenson quit work as a result of back pain on December 14, 1978.
 
 
 26
 Given these facts, the November 27, 1978 Union Market Clinic Supplemental Report describing a November 24 re-injury to Stevenson's back[11] and the December 15, 1978 Supplemental Report describing more severe pain for the past three weeks should have prompted Linens to investigate whether Stevenson's re-injury, aggravating the September 18 injury, occurred on the job. See Leyden v. Capitol Reclamation Corp., 2 BRBS at 30. Although the report did not describe an incapacitating injury, and said that Stevenson was able to work, the fact that Stevenson said on December 18 that he quit work because of his back should have alerted Linens to explore the possibility of liability.
 
 
 27
 This case is distinguished from cases where courts have not found sufficient knowledge on the employer's part to warrant further investigation.[12] In Sun Shipbuilding & Dry Dock Co. v. Walker, 590 F.2d 73 (3d Cir. 1978), the claimant twice certified to his insurer that his injury was not due to occupational causes. The Walker court refused to impose upon the employer the duty to double-check the accuracy of the employee's certification. In Strachan Shipping Co. v. Davis, 571 F.2d 968 (5th Cir. 1978), the connection between the employee's illness and his work as a bulk cargo gang foreman unloading "dust boats" was not as apparent to a layman as is the connection between back pain and moving heavy objects in the case at hand. Moreover, the court stressed that the employee was represented by an attorney at the time the company was notified about his illness and the attorney also failed to provide proper notification. Finally, in Sun Shipbuilding & Dry Dock Co. v. Bowman, 507 F.2d 146 (3d Cir. 1975), the employer had no notice of deterioration of the employee's hearing, which was already impaired at the start of employment. Accordingly, the court found no reason for the employer further to investigate medical reports describing the employee as deaf.
 
 
 28
 The facts in this case suggested in a fashion far more clear than in the cases just described the possibility that Stevenson's injury occurred at work. Given those facts, Linens should have concluded that compensation liability was possible, and should have explored whether Stevenson's injury in fact occurred at work.
 
 V. Conclusion
 
 29
 The decision of the Benefits Review Board is reversed. The case is remanded for consideration of the prejudice issue, and for a determination of the nature and extent of Stevenson's injury.
 
 
 30
 Reversed and remanded.
 
 
 
 *
 The caption in this case was reformed in accordance with a decision of this Court that the Director of the Office of Workers' Compensation Programs of the United States Department of Labor should be a named respondent in all Benefits Review Board review proceedings. See Shahady v. Atlas Tile & Marble Co., 673 F.2d 479 (D.C.Cir.1982)
 
 
 **
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 Act of March 4, 1927, ch. 509, 44 Stat. 1424, as amended, 33 U.S.C. § 901 et seq. (1970), made applicable to the District of Columbia, with exceptions not relevant here, by the Act of May 17, 1928, ch. 612 §§ 1, 2, 45 Stat. 600, as amended, D.C.Code §§ 36-501, 36-502 (1973). See Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)
 Application of the Act to the District of Columbia has now been superseded by the District of Columbia Workers' Compensation Act of 1979, D.C.Law No. 3-77, 27 D.C.Reg. 2503 (1980), 36 D.C.Code §§ 301 et seq. (1981). See District of Columbia v. Greater Washington Central Labor Council, 442 A.2d 110 (D.C.App.1982). However, since Stevenson's injury and claim occurred in 1978 and 1979 respectively, the Longshoremen's and Harbor Workers' Compensation Act applies to this case.
 
 
 [2]
 At another point in his testimony, however, Luckett said that if Stevenson had taken off from work on November 24 to visit a doctor, there would be no notation of the excused early departure from work on Stevenson's absentee record. JA 78
 
 
 [3]
 Luckett also attempted to testify about a conversation with Lane regarding Stevenson, but this testimony was barred on hearsay grounds. JA 128
 
 
 [4]
 The ALJ's decision also determined that Linens was prejudiced by lack of notice and that Stevenson did not sustain a disabling injury. The ALJ subsequently denied Stevenson's post-hearing motion to reopen the record for additional medical evidence. Since the BRB affirmed the ALJ's finding that Linens had no actual knowledge of Stevenson's purported injury, the BRB did not reach the other issues decided by the ALJ
 
 
 [5]
 Section 912 states in full:
 (a) Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death, or thirty days after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury or death and the employment. Such notice shall be given (1) to the deputy commissioner in the compensation district in which the injury occurred, and (2) to the employer.
 (b) Such notice shall be in writing, shall contain the name and address of the employee and a statement of the time, place, nature, and cause of the injury or death, and shall be signed by the employee or by some person on his behalf, or in case of death, by any person claiming to be entitled to compensation for such death or by a person on his behalf.
 (c) Notice shall be given to the deputy commissioner by delivering it to him or sending it by mail addressed to his office, and to the employer by delivering it to him or by sending it by mail addressed to him at his last known place of business. If the employer is a partnership, such notice may be given to any partner, or if a corporation, such notice may be given to any agent or officer thereof upon whom legal process may be served or who is in charge of the business in the place where the injury occurred.
 (d) Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the deputy commissioner at the first hearing of a claim for compensation in respect of such injury or death.
 
 
 [6]
 The court generally must defer to the Benefits Review Board both in its fact-finding capacity and in its role as interpreter of the Act. National Steel & Shipbuilding Co. v. Bonner, 600 F.2d 1288, 1292 (9th Cir. 1979). In this case, however, the ALJ's and the BRB's decisions did not expressly address the issue of the proper application of the § 920(b) presumption. We can only infer from Judge Miller's dissent, asserting that § 920(b) applies to § 912(d), that neither the ALJ nor the BRB recognized the broad application of the § 920(b) presumption
 
 
 [7]
 As a result of our scrutiny of the record, we would place less credence than the ALJ did upon Luckett's testimony concerning Linens' records. For example, Luckett testified that since "(t)here was no notification of another accident," the "A" referred to the September injury. JA 133. Luckett's statement implies that there was another way to record a re-injury. But among the nine letter-codes for noting reasons for absences on the absentee record, there is no code to note re-injury, and only one code to note plant accidents. JA 204. Separate reports of accidents, which would indicate re-injuries, are maintained in employees' compensation folders. JA 130. In our view, these facts hardly make it more likely than not that a re-injury would be distinctly noted on the absentee report. Moreover, Luckett himself testified that the secretary who filled out the absentee record did not always conform to the conventions for notation; for example, she failed to make a notation on the absentee record when she should have recorded an "O". JA 134
 We also have doubts about the accuracy of Eckstein's record keeping. The record in this case does not reflect the extent of Luckett's knowledge about Eckstein's procedure for recording re-injuries. Nor does the record show whether there might be reasons for the absence of a report in Eckstein's file other than the non-occurrence of injuries.
 
 
 [8]
 "(T)he reasonableness of claimant's reliance on a particular person as a conduit for knowledge or notice to the employer should be appraised in the light of the knowledge and instructions available to claimant, rather than on legalistic considerations of the recipient's actual authority." 3 Larson's Workmen's Compensation Law § 78.31(b). Since we decide this case on other grounds, we do not consider whether Stevenson's report to Lane was sufficient to satisfy the requirements of § 912(d)
 
 
 [9]
 Since our holding concerns only the appropriate weight due negative evidence in light of contradicting allegations, the decision of this court respects the principle that the administrative law judge determines questions of witness credibility
 We note, however, that in each of the cases cited by the BRB and by Linens for the proposition that the ALJ alone decides credibility questions, the testimony was more directly conflicting than in this case. See, e.g., Calbeck v. Strachan Shipping Co., 306 F.2d 693 (5th Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 950, 9 L.Ed.2d 978 (1963) (ALJ believed examining doctor who testified accident neither caused nor aggravated claimant's condition, and disbelieved claimant's experts who testified accident served to mask claimant's cancer, thereby delaying treatment); Todd Shipyards Corp. v. Donovan, 300 F.2d 741 (5th Cir. 1962) (where doctors were unwilling to state categorically that employee's work activities caused injury, and were also unwilling to state categorically that employee's work activities did not cause injury, ALJ could select the more reasonable inference in light of the evidence as a whole); Lee v. Hechinger Co., 3 BRBS 288, BRB No. 75-195 (Feb. 27, 1976) (ALJ disbelieved employee who testified he resigned October 15 and believed supervisor who testified employee resigned October 6 or 7).
 
 
 [10]
 It is in all likelihood easier for employers to develop rebutting evidence on the notification issue than for them to develop rebutting evidence on the issue of whether an injury is job-related. We note that courts have not hesitated to impose upon employers the burden of presenting rebutting evidence on the latter issue. See, e.g., Swinton v. Kelly, 554 F.2d at 1084; Wheatley v. Adler, 407 F.2d at 313-14
 
 
 [11]
 It is immaterial that the November 27 Supplemental Report specifically referred to a fall. Whether or not Stevenson in fact fell at work, Linens knew, or should have known, that Stevenson's work might have caused him to fall
 
 
 [12]
 Courts have also often found a duty to investigate further where the employer knew that the injury at issue occurred on the job. See, e.g., United Brands Co. v. Melson, 594 F.2d 1068, 1073 (5th Cir. 1979); Butler v. District Parking Management Co., 363 F.2d at 684; Todd Shipyards Corp. v. Landy, 239 F.Supp. 679, 680 (N.D.Cal.1965)