Willard STARK, Petitioner,

v.

WASHINGTON STAR CO., et al. and Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Respondents.

No. 86–1615.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1987.

Decided Nov. 20, 1987.

Michael V. Kowalski, Washington, D.C., was on the brief, for petitioner.

David P. Callet, with whom Paul M. Eskildsen, Washington, D.C., was on the brief, for respondent, The Washington Star Co.

Cornelius S. Donoghue, Jr., Atty., Dept. of Labor, Washington, D.C., entered an appearance, for appellee, Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before BUCKLEY and WILLIAMS, Circuit Judges, and AUBREY E. ROBINSON, Jr.,* District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The Act has been superseded by the District of Columbia Workers' Compensation Act of 1979, 36 D.C.Code §§ 301 et seq. (1981), but continues

WILLIAMS, Circuit Judge:

Willard B. Stark petitions for review of a decision of the Benefits Review Board (the "Board") affirming denial of his claim for permanent and total disability benefits under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 et seq. (1982) (the "Act"), as extended by the District of Columbia Workers' Compensation Act, 36 D.C.Code § 501 et seq. (1973).[1] Stark seeks benefits for respiratory ailments that he believes can be traced to his 22 years of work as a pressman at the now-defunct Washington Star.

The Administrative Law Judge ("ALJ") denied Stark's claim on several grounds. The one on which the Board affirmed was the conclusion that Stark had failed to file a claim within a year after the injury, as required by § 13 of the Act, 33 U.S.C. § 913. We affirm the Board's decision. Substantial evidence supports the ALJ's and the Board's two essential findings: that Stark had knowledge of his injury—and any link to his work—more than one year before he filed his claim in 1980; and that the Star lacked sufficient knowledge of that link to toll the statute under § 30(f), 33 U.S.C. § 930(f). Also, we find no error in the Board's failure to overturn the ALJ's ruling denying Stark's discovery request for air quality records; the request was made at the last minute and the materials sought were only marginally relevant.

## I. TIMELINESS OF APPELLANT'S CLAIM

The Act requires the Board to treat the ALJ's findings of fact as conclusive if supported by substantial evidence in the record considered as a whole. 33 U.S. C. § 921(b)(3). This court, rather than reviewing the Board's decision to determine

to apply to claims deriving from prior injuries, such as petitioner's. See Keener v. Washington Metropolitan Area Transit Authority, 800 F.2d 1173, 1175 (D.C.Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

whether it is supported by substantial evidence, *cf. Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), reviews it for errors of law and to verify that the Board adhered to the scope of review specified for its relation to the ALJ. *Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234, 237 (3d Cir. 1979); *see also Stevenson v. Linens of the Week*, 688 F.2d 93, 96–97 (D.C.Cir.1982). In order to decide whether the Board has properly adhered to its scope of review, however, we must conduct an independent review of the record to determine whether the ALJ's findings are supported by substantial evidence. *McCabe*, 593 F.2d at 237; *Stevenson*, 688 F.2d at 96–97. Thus, our review is said to involve very little difference to the Board when its decision differs from the ALJ's, *see McCabe*, 593 F.2d at 237 n. 1, a problem not presented here.

### A. *Stark's Knowledge of the Injury and its Relation to his Work*

Section 13(a) of the Act provides that [e]xcept as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore [sic] is filed within one year after the injury or death. . . . The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913(a).

■ There is ample evidence to support the ALJ's finding that Stark was aware, at least four years before he filed his claim in 1980, that his pulmonary disease might be occupationally related. (1) He testified that he believed the air in the pressroom was dangerous and was making his respiratory problems worse (Tr. 88–89). (2) Beginning on the first or second day of his employment at the Star and continuing throughout his career there, he coughed up a black substance; he believed that the substance—or at least its color—was de-

rived from ink in the pressroom atmosphere (Tr. 84, 106). (3) During his later years at the Star, he wore a breathing mask which he understood was designed to protect him from the air pollutants in the pressroom (Tr. 79–82). (4) He testified that his doctor recommended in 1975 that he retire because his working environment was not good for him (Tr. 92, Ex. 1 at 82–83, 90). (5) In February 1976 he did indeed retire for this reason (Tr. 88–90, Ex. 1 at 82–83). (6) He retained an attorney in 1976 to represent him in a workmen's compensation claim because he thought he had developed a lung condition as a result of working conditions in the pressroom (Tr. 97). (7) On learning in 1978 that some Star pressmen were going to file a class action against the Star concerning their lung condition, he opted out because he believed his claim was *more serious* than theirs (Tr. 98–99). (8) Finally, he testified he did not file a claim earlier because he had not yet accumulated large medical expenses (Tr. 97–98; Ex. 1 at 74–76).

The only item arguably pointing the other way is some ambiguous advice Stark received from his physician, Dr. Sappington. When Stark saw him in 1975 about his respiratory problems, Dr. Sappington told him that he could not establish a definitive link between his environment and his deteriorating condition. The doctor, however, did not deny the relation between Stark's job and his respiratory condition. Indeed, Stark testified that he understood Dr. Sappington to recommend that he stop working at the Star because the environment was bad for his condition (Ex. 1 at 82–83, 90).

Courts have charged employees with knowledge that their injury was work-related on much weaker evidence than that recounted above. *See, e.g., Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234, 238–39 (3d Cir.1979) (court, rejecting ALJ's conclusion, finds that company's start of "extensive safety campaign" urging ear protection put employees on notice that their hearing loss was work-related); *Sun Shipbuilding & Dry Dock Co. v. Bowman*, 507 F.2d 146, 150 (3d Cir.1975) (employee knowledge inferred from his com-

plaints about noise on the job, from employer's exhortation to workers to wear earplugs to protect their hearing, and from employee's own use of earplugs and complaints about noise).

There is clearly substantial evidence that Stark was aware, or by the exercise of reasonable diligence should have been aware, of his injury and its possible work-relation more than one year before he filed suit.

### B. *Employer's Knowledge of the Injury and its Link to the Workplace*

■ Section 30(f) of the Act, 33 U.S.C. § 930(f), tolls the limitations period of § 13(a) if the employer fails to comply with § 30(a)'s requirement that it file a report of the injury with the Secretary of Labor within 10 days of its occurrence. The tolling occurs, however, only if the employer "has been given notice" or "has knowledge" of the injury or death. "Knowledge" has been construed to encompass a kind of inquiry notice: knowledge of the injury itself and of "facts that would lead a reasonable man to conclude that compensation liability is possible, and that he therefore ought to investigate the matter further." *Stevenson v. Linens of the Week*, 688 F.2d 93, 100 (D.C.Cir.1982). The Star did not file the report. It successfully contended before the ALJ and the Board that it lacked the knowledge or notice necessary to trigger the filing obligation.

The Act establishes a presumption that "sufficient notice" of any claim has been given. § 20(b) of the Act, 33 U.S.C. § 920(b). Although respondent argues that this section is inapplicable to § 30(a), the section states that the presumption applies to "any proceeding" under "this chapter." This issue need not be decided in this case, however; both the ALJ and the Board assumed that the presumption applied, and their decisions are sustainable on that premise.

Here there is no doubt that the Star was aware that Stark suffered respiratory ailments. His medical record at the Star contains references to such problems as bronchial asthma, laryngitis, acute bronchitis, and Dr. Sappington's letters to the Star, written in late 1975 and early 1976, list respiratory difficulties in some detail (Dep. Ex. 3, 4).

What is lacking, however, is any evidence that would put the Star on notice of any work connection. Stark himself admitted that he never informed any Star personnel—including those who worked at the Star's medical clinic—of his belief that he suffered from employment-related pulmonary disease (Tr. 83–84). His long history of respiratory ailments before coming to the Star—a variety of severe, chronic, lung-related illnesses, including bronchitis, whooping cough, pleurisy, frequent colds, and pneumonia (Tr. 69–76)—would naturally have suggested causes outside the workplace. So would his history of smoking two packs of cigarettes a day for 22 years (Tr. 73–76). There is also no evidence in the record that anyone ever witnessed Stark coughing up a black substance at work.

Perhaps most importantly, Dr. Sappington's letters to the Star, recommending that Stark be retired due to a totally disabling respiratory condition, make no mention of any connection between claimant's condition and his employment. Instead, the doctor stated that aggravating factors other than the workplace—such as "inclement weather conditions"—led him to the conclusion that Stark should not work at any employment. *Cf. Strachan Shipping Co. v. Davis*, 571 F.2d 968, 974 (5th Cir.1978) ("We refuse to impose upon the employer the duty to conduct further investigation when the employee informs the employer that he has seen a doctor, is ill, and cannot return to work, but when neither the employee nor his attorney make any mention that the illness may be job-related"); *Sun Shipbuilding & Dry Dock Co. v. Walker*, 590 F.2d 73, 77 (3d Cir.1978) (employee, who was regularly exposed to toxic fumes at work, entered the hospital for pneumonia and along with his doctor signed a form certifying that his illness was not work-related; any suspicions the employer may have had were "laid to rest by the representations to the contrary").

■ The Star's requirement that employees wear breathing masks, coupled with the information about respiratory difficulties, might seem to put the Star on notice of the now-alleged causal relation between Stark's work and his disease. The cases, however, make clear that an employer's adoption of such health measures, coupled with information that the employee suffers the type of ailment against which the measures are aimed, cannot alone support such an inference. In *Sun Shipbuilding & Dry Dock Co. v. Bowman*, 507 F.2d 146 (3d Cir.1975), for example, the employer both conducted a campaign to protect against hearing loss and knew from company physicals that the employee's hearing was impaired. The court ruled, however, that this was not enough: the hearing loss discovered at the employee's opening physical obviously showed no work link, and the physicals thereafter showed no *deterioration*. Accordingly, the court overturned the hearing officer's finding of employer notice. *Id.* at 148, 151–52. *See also Sun Shipbuilding & Dry Dock Corp. v. McCabe*, 593 F.2d 234, 239–40 (3d Cir.1979).

Our decision in *Stevenson v. Linens of the Week*, 688 F.2d 93 (D.C.Cir.1982), is not to the contrary.[2] Stevenson suffered two successive back injuries. The employer concededly knew that the first was the direct result of his heavy lifting on the job. Two months later Stevenson slipped on the job and suffered further injury to his back. He testified to having told the firm's manager of the second injury, *id.* at 95; the ALJ disbelieved this testimony, solely, it appears, on the ground that if Stevenson had done so the firm would have made a business record of the injury, *id.* at 96. It was conceded that the firm received a clinic report stating that Stevenson had fallen and suffered re-injury to his back. *Id.*

The *Stevenson* court found that the employer had both knowledge and inquiry notice of the injury and its work relation. The finding of knowledge appeared to turn on the court's rejecting the ALJ's disbelief of Stevenson's account of his conversation with the manager, but the court does not explain this rejection. It appears that the court considered itself empowered to reverse such disbelief because the ALJ rested it solely on inferences from blanks in the firm's records—evidence whose probative weight the court was as qualified to evaluate as the ALJ. The court's view appears to parallel that of *United States ex rel. Exarchou v. Murff*, 265 F.2d 504 (2d Cir.1959) (Clark, J.), finding a reviewing court entitled to overturn a hearing officer's disbelief of oral testimony where the disbelief constituted "incredulity not of the witness, but of the story itself," *id.* at 507. (The hearing officer could not believe that a married man who resided for a time with a divorcee (and her mother and sons), occasionally went dancing with her, and contributed towards the rent, could be innocent of adultery). Undisputed evidence as to serious problems with the accuracy of the employer's medical records, 688 F.2d at 99 n. 7, clearly strengthened the *Stevenson* court's readiness to intervene on the point.

The court's finding of inquiry notice appears to have been based on the employer's conceded awareness of the first on-the-job injury, coupled with the clinic's report of re-injury through a fall just two months later. Thus the facts suggested a work link specifically tied to the particular employee. The court most certainly did not suggest that an employer was on notice merely from knowledge of generalized workplace hazards plus the employee's suffering an injury of a type associated with that hazard. Indeed, the court distinguished the *Bowman* case (which had refused to infer notice from such facts), noting that in *Bowman* the physical examinations conducted after the employee started work showed no deterioration of hearing since that moment. 688 F.2d at 101.

The distinction between this case and *Stevenson* is further heightened by the letters from Stark's own doctor, explaining Stark's retirement exclusively in terms of factors unrelated to his occupation. This clearly tended to negate any duty to inves-

---

2. *Stevenson* concerns the knowledge provision of § 12(a) of the Act, which parallels that of

§ 30. We do not base our distinction of *Stevenson* on that difference.

tigate, and in fact the *Stevenson* court distinguished the *Walker* case, discussed above, pointing to Walker's certification that the injury "was *not* due to occupational causes." *Id.* at 100 (emphasis in original). Though the statement in *Walker* was more explicitly negative than here, we think the Star was entitled to draw the obvious negative inference.

Finally, petitioner points to certain remarks in the *Stevenson* opinion seeming to disparage "negative evidence" in such cases. The court said that such evidence "may in some circumstances be informative," 688 F.2d at 99, and that to overcome the presumption (under § 920) such evidence must be "specific and comprehensive," *id.* This dictum could not have been intended to cast doubt generally on the value of negative evidence: evidence offered to prove a negative (here, the employer's lack of knowledge) will necessarily be negative. In view of the court's observation that the "quantum and type of evidence required ... corresponds to the specificity of the claimant's evidence and allegations," *id.* (interior quotes omitted), we take the court to have been merely pointing out that it is a matter of degree whether the employer has shown sufficient negative evidence to overcome the presumption.

Our review of the record convinces us that there is substantial evidence to justify the finding that the Star lacked knowledge or notice that the illness was work-related. Accordingly, § 30(f) of the Act does not toll the limitations period of § 13(a).

## II. DISCOVERY RULING

Lastly, we face the question of whether there was reversible error in the ALJ's denial of Stark's belated motion to produce reports (arguably in the Star's possession) concerning the air quality in the Star pressroom. The ALJ denied the motion as untimely and as a "fishing expedition" (Tr. 5–6). The Board did not address the request. We hold that the ALJ's action is not a ground for reversing the Board.

First, it is quite doubtful whether Stark adequately preserved the alleged error for appeal. In his Petition for Review to the Board, he did not identify the treatment of the discovery motion as an issue and referred to it in only the most offhand way. The Board could reasonably have supposed that it was not being asked to review a discovery issue at all.

▮ Second, the records were only marginally relevant. While Stark argues that the reports would help establish the Star's knowledge of the link between work and injury, such knowledge cannot, as noted above, be inferred merely from the employer's general awareness of hazards in the workplace, coupled with knowledge that the employee suffers a disease of a type implicated by the hazard. Moreover, the evidence of the Star's breathing-mask regulation established such awareness for what it was worth. In view of the records' limited relevance and redundant character, the ALJ did not abuse his discretion in denying the motion to produce (and the continuance that its grant would have required). *See PATCO v. FLRA*, 685 F.2d 547, 588 (D.C. Cir.1982) (denial of continuance is within discretion of the ALJ and will not be overturned absent clear showing of abuse; factors include length of delay, prejudice, and importance of evidence); *Fitzhugh v. Drug Enforcement Administration*, 813 F.2d 1248, 1252–53 (D.C.Cir.1987) (same); *see also* 20 C.F.R. § 702.341 (1987) (providing that "depositions or interrogatories must be completed within reasonable times to be fixed by the ... administrative law judge").

For the reasons set out above, we affirm the decision of the Benefits Review Board.