8 F.3d 71
 303 U.S.App.D.C. 418
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Welca BRASWELL, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, A.A.
Beiro Construction Co., and Lumbermen's Mutual
Casualty Company, Respondents.
 No. 92-1256.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 5, 1993.
 
 Before: EDWARDS, WILLIAMS, and RANDOLPH, Circuit judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of an order of the Benefits Review Board, and was briefed and argued by counsel. The court has determined that the issues presented do not warrant a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court that the petition for review of the Benefits Review Board's Order is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Welca Braswell petitions for review of the May 27, 1992, decision of the Benefits Review Board ("Board") affirming the Administrative Law Judge's March 1, 1991, Decision and Order denying petitioner disability benefits under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 et seq., as extended by the District of Columbia Workmen's Compensation Act, 36 D.C.CODE § 501 et seq.
 
 
 5
 This case arose from an on-the-job accidental injury Braswell suffered on August 25, 1981, when he fell and twisted his left leg. Braswell asserted that injuries he sustained have significantly affected both his home life and his ability to perform his job. He sought disability benefits for a 40 percent permanent, partial disability to his left knee and 25 percent permanent, partial disability to his right knee.
 
 
 6
 In a Decision and Order of October 22, 1987, the ALJ denied Braswell's claim, concluding that he had fully recovered from any injury resulting from the August accident and that his knee problems were caused exclusively by his pre-existing arthritis. The Board, stating that this Decision "adopted the employer's post-hearing brief in significant part ... [and thus] lacks the impartial weighing of evidence, pro and con, which is necessary to resolution of a claim," vacated the Decision and remanded for the ALJ independently to set forth, discuss, and address the relevant evidence and to explain his findings. The ALJ responded with the Decision and Order of March 1, 1991, in which he reaffirmed his former Decision and made explicit credibility findings. The Board affirmed the second Decision on May 21, 1992, with the Decision here on petition for review.
 
 
 7
 The Board is not authorized to make independent findings of fact. See Stevenson v. Linens of the Week, 688 F.2d 93, 96-97 (D.C.Cir.1982); see also 33 U.S.C. § 921(b)(3). Its role is limited to determining whether the ALJ's decision "is supported by substantial evidence considered on the record as a whole and is otherwise in accordance with the law." Randall v. Comfort Control, Inc., 725 F.2d 791, 796 (D.C.Cir.1984). Substantial evidence is defined as " 'more than a mere scintilla[,] [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Poulin v. Bowen, 817 F.2d 865, 870 (D.C.Cir.1987). On petition for review of the Board's decision, we must independently examine the record to determine whether the ALJ's findings are supported by substantial evidence. See Stark v. Washington Star, 833 F.2d 1025, 1027 (D.C.Cir.1987); Randall, 725 F.2d at 796; Stevenson, 688 F.2d at 97.
 
 
 8
 The evidence consists of Braswell's testimony in a hearing before the ALJ; the deposition testimony of his treating physician, Dr. Lehman, and the employer's expert witness, Dr. Gordon; and the treatment or examination records and correspondence of both doctors.
 
 
 9
 Both Braswell and Dr. Lehman testified that Braswell directly injured his left knee during the accident, aggravating a pre-existing degenerative arthritic condition that became symptomatic as a result. They further testified that secondary stress to Braswell's right knee, caused by his favoring of his left knee, resulted in permanent damage to the right knee that required him to undergo arthroscopic surgery to the right knee in June 1983, and caused his pre-existing arthritic condition to become symptomatic in that knee as well. As a result of these injuries, Braswell testified, he cannot climb stairs or ladders, walk long distances or carry heavy objects.
 
 
 10
 Dr. Gordon testified that Braswell's arthritis and any changes in his arthritic condition were unrelated to the August 25, 1981, injury; that there could be some connection between the accident and the condition of Braswell's left knee if there had been internal derangement to that knee, but that there was no evidence of such a derangement; and that "it would be absolutely ridiculous" to assume that the condition of the right knee could result from "secondary stress" as Braswell and Dr. Lehman supposed.
 
 
 11
 Dr. Lehman's treating records tend to support Dr. Gordon's conclusions. Those records indicate that Braswell was overweight with a history of degenerative arthritis and that his current symptoms are consistent with that continuing condition. In addition, as the ALJ noted, while Dr. Lehman's records indicated that Braswell suffered from pain in both knees soon after the August 1981 accident, those records made no mention of Braswell's right knee from April 1982 to June 6, 1983, when Braswell underwent surgery on that knee. The records also omit any reference to Braswell's left knee between July 1983 and February 1985. From these gaps, it is possible to infer that Braswell's condition had improved after the accident. Further, Dr. Lehman's records and correspondence attributed the secondary stress theory to Braswell on several occasions without adopting the theory as his own, suggesting that his deposition testimony concerning Braswell's right knee may not have been grounded in his best medical judgment.
 
 
 12
 In his Decision and Order dated March 1, 1991, the ALJ made explicit credibility findings against Braswell and in favor of Dr. Gordon's opinion that the accidental injury in 1981 caused no permanent disability. The ALJ's credibility determinations should be given substantial deference, cf. Throckmorton v. National Transportation Safety Bd., 963 F.2d 441, 444 (D.C.Cir.1992); Williams Enterprises v. NLRB, 956 F.2d 1226, 1232 (D.C.Cir.1992). In particular, " 'the process of weighing conflicting medical evidence and drawing inferences therefrom properly lies within the authority of the ALJ.' " Smith v. Director, Office of Workers' Compensation Programs, 843 F.2d 1053, 1057 (7th Cir.1988) (quoting Arch Mineral Corp. v. Director, 798 F.2d 215, 221 (7th Cir.1986)).
 
 
 13
 In light of Dr. Gordon's testimony, Dr. Lehman's records, and the ALJ's finding that Braswell was not a credible witness, there was substantial evidence to support the ALJ's decision, and thus, the Board's affirmance of it. The petition for review is therefore denied.