Frank **RUGGIERO**, Plaintiff,

v.

**REDERIET FOR M/S MARION** and Ake Hogberg, Defendants and Third-Party Plaintiffs,

v.

**TURNER & BLANCHARD, INC.**, Third-Party Defendant.

**UNITED STATES** of America, Plaintiff-Intervenor,

v.

Frank **RUGGIERO**, Defendant.

**No. 65 Civ. 2406.**

United States District Court
S. D. New York.

Jan. 12, 1970.

———

Zimmerman & Zimmerman, New York City, for Frank Ruggiero, Martin Lassoff, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for Rederiet for M/S Marion and Ake Hogberg, J. Ward O'Neill, Stephen S. Gerard, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, Louis E. Greco, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, New York City, for United States, by Peter Martin Klein, New York City, of counsel.

### MEMORANDUM

BONSAL, District Judge.

On March 14, 1969, a jury awarded plaintiff Frank Ruggiero damages of $19,500 for injuries resulting from his fall aboard defendant's vessel, the M/S MARION, on January 2, 1964, while he was employed as a longshoreman by Turner & Blanchard, Inc., a stevedoring company. The United States of America (the government), the intervening plaintiff, moved after trial for summary judgment impressing a lien upon the judgment to the extent of compensation payments made to plaintiff out of the Special Fund created by Section 44 of the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 944.

Since 1966, plaintiff has been receiving compensation payments of $54 per week out of the Special Fund, pursuant to an Award dated October 27, 1966, based upon a Compensation Order of June 23, 1966, of Deputy Commissioner Hughes of the Bureau of Employees Compensation for the Second Compensation District, a division of the United States Department of Labor which administers the Act.

In his Compensation Order, Deputy Commissioner Hughes found that as a result of plaintiff's accident on January 2, 1964 aboard the M/S MARION, and of a subsequent accident on August 25, 1964 aboard the S/S MORMAC SCAN while plaintiff was employed by the John W. McGrath Corporation, plaintiff was permanently totally disabled, that each accident contributed 50% to plaintiff's permanent total disability, and that plaintiff was therefore entitled to compensation out of the Special Fund.

*The Lien*

Section 8 of the Act, 33 U.S.C. § 908, specifies the compensation payable to an employee for various injuries and disabilities, and subsection (f), pursuant to which plaintiff has been receiving the compensation payments at issue in this case, provides:

"(f) Injury increasing disability: (1) If an employee receive an injury which of itself would only cause permanent partial disability but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall provide compensation only for the disability caused by the subsequent injury: *Provided, however,* That in addition to compensation for such permanent partial disability, and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid the remainder of the compensation that would be due for permanent total disability. *Such additional compensation shall be paid out of the special fund established in section 944 of this title.*" 33 U.S.C. § 908(f) (emphasis added.)

The government contends that the Special Fund referred to in subsection (f) above is entitled to a lien upon plaintiff's judgment to the extent of pay-

ments made to him out of the Special Fund. This appears to be a matter of first impression.

■ It is well settled that an employer or its insurance carrier is entitled to a lien on a judgment recovered by an employee against a third person on account of injuries for which he has received compensation, to the extent of the compensation paid. The Etna, 138 F.2d 37 (3d Cir. 1943); Fontana v. Pennsylvania R. R., 106 F.Supp. 461 (S.D.N.Y. 1952), aff'd, 205 F.2d 151 (2d Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953).

It is plaintiff's position that the existence of the employers' and insurers' lien is based upon the following provisions of section 33 of the Act:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third per-

son unless such person shall commence an action against such third person within six months after such award.

"(h) Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section." 33 U.S.C. §§ 933(a), (b), & (h).

and that in light of these provisions the Special Fund is not entitled to a lien, because they provide for reimbursement to employers and insurers only, and the Special Fund is neither.

■ The Act does not provide for a lien. However, The Etna, supra, and Fontana v. Pennsylvania R. R., supra, found a lien not on the statute as it then read (§§ 933(a), (b) & (h)),* but upon the "application of the equitable doctrine of subrogation." Fontana v. Pennsylvania R. R., supra, 106 F.Supp. at 462. In Fontana, Judge Weinfeld, quoting the court in The Etna, stated:

"'* * * We find no intent indicated by the Act to take away from the employer who pays compensation without an award his right to reimbursement out of his employee's recovery from third persons. On the contrary, we think that the intent and scheme of the Act requires that the employer's right to subrogation for compensation payments made in the circumstances here shown be recognized

---

* In 1959, section 33 of the Act was amended to read as it does now. Before amendment, subsection (a) and (b) provided:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary may provide, to receive such compensation or to recover damages against such third person." 33 U.S.C. § 933 (a)

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the

employer of all right of the person entitled to compensation to recover damages against such third person." 33 U.S.C. § 933(b)

The amendment is not significant for purposes of this case. It was intended to alleviate the hardship of requiring an employee to elect between compensation and an action for damages; it was not intended to allow the employee a previously impermissible double recovery, S. Rep. No. 428, 86th Cong., 1st Sess. 1959, 1959 U.S.Code Cong. & Ad.News, p. 2135, and it left unchanged the employers' and insurers' right to a lien, regardless of the applicability of the assignment provisions of section 33(b). Liberty Mutual Insurance Company v. United States, 290 F.2d 257 (2d Cir. 1961).

wholly apart from and without regard for the assignment provided for in Sec. 33(b) of the Act. It is only the right of control of the employee's right of action against third persons which an employer forgoes by paying compensation without an award. His right to reimbursement out of the recovery for the employee's injury remains unaffected.'" 106 F.Supp. at 462.

and he also found that

"* * * the entire scheme of the Act negates any theory that an injured employee is entitled to both compensation from his employer and damages from third parties." 106 F. Supp. at 463.

█ The same rationale applies to compensation paid by the Special Fund. The payments made to plaintiff out of the Special Fund are required by the Statute, 33 U.S.C. §§ 908(f), 944, and are made by reason of the acts of another which have given rise to legal liability. In The Etna, *supra*, the court held that:

"* * * the right to subrogation * * * under equitable principles, attaches where one, not acting officiously, pays money on account of a legal obligation resting upon him for the imposition of which another is held pecuniarily responsible." 138 F. 2d at 39.

Accordingly, the Special Fund is entitled to a lien upon the proceeds of plaintiff's judgment.

## The Extent of the Lien

The government contends that the Special Fund is entitled to a lien in the total amount of compensation paid by it. The government has informed the court that payments to plaintiff through July 31, 1969 totalled $10,051.71, and that since that date he has been receiving compensation from the fund at the rate of $54 per week for an additional $1,-170.00 through December 31, 1969, totalling $11,221.71. Counsel for plaintiff has informed the court that his dis-

bursements for doctors and other witnesses amounted to $977.76, and his legal fees to $7,102.33, totalling $8,080.09, and that the Travelers Insurance Company's compensation lien amounts to $3,896.63. These amounts total $23,198.-43, or more than plaintiff's judgment for $19,500.00.

## The Nature of the Special Fund

The Special Fund was established by section 44 of the Act, 33 U.S.C. § 944, for the purpose of making compensation payments under various provisions of the Act, including section 8(f), 33 U.S. C. § 908(f), under which plaintiff has been receiving compensation. Section 44(a) provides that the monies in the Special Fund are held in trust by the Treasurer of the United States as custodian, and that they are not the property of the United States, 33 U.S.C. § 944(a). Congress does not appropriate money for the Special Fund. Its assets consist solely of (1) $1,000 compensation payments by an employer into the Special Fund on the death of an employee resulting from injury, where there is no beneficiary entitled to compensation, and (2) fines and penalties collected under the Act. 33 U.S.C. § 944(c) (1) and (2). Payments pursuant to section 8(f), 33 U.S.C. § 908(f), have priority over other payments authorized from the Special Fund, 33 U.S.C. § 944(c) (1), but section 44 specifically provides that:

"(e) Neither the United States nor the Secretary shall be liable in respect of payments authorized under section 908 of this title in an amount greater than the money or property deposited in or belonging to such fund." 33 U. S.C. § 944(e).

█ Thus, an employee's right to continued compensation from the Special Fund depends on the existence of monies in the Special Fund, which come from restricted and uncertain sources. Indeed, the government's affidavit in support of its motion for the lien states that on March 14, 1969, the date of plaintiff's judgment, the Special Fund had only $1,192.12. It is therefore pos-

sible that the Special Fund will be exhausted and unable to continue the payments to the plaintiff.

### Judgment Covers only First Injury

Plaintiff's action against defendant was to recover damages for injuries sustained as a result of his accident aboard defendant's vessel, the M/S MARION, on January 2, 1964, and the jury awarded plaintiff $19,500 for those injuries. As indicated above, however, the payments made to plaintiff out of the Special Fund are for his permanent total disability, which the Deputy Commissioner found was a product of the injury of January 2, 1964, *and* the subsequent injury of August 25, 1964. The Deputy Commissioner found that plaintiff's permanent disability resulted 50% from his accident on January 2, 1964 and 50% from his accident on August 25, 1964.

### Purpose of the Act

█ The Act, of course, is a humanitarian one designed to protect longshoremen. Both parties recognize this but reach different conclusions—the plaintiff contends that it would defeat the purpose of the Act to give the Special Fund a lien on plaintiff's judgment, which places him at the risk of the Special Fund's having insufficient funds to continue compensating him, while the government argues that failure to grant the Special Fund a lien in the full amount of its compensation payments will permit plaintiff a double recovery and may deprive the Special Fund of monies with which to pay other employees who are entitled to compensation from the Fund, and who have not recovered a judgment from a third party. There is weight to both arguments, but the short answer to the government's position is that, while plaintiff should not be permitted a double recovery, he should not be penalized by virtue of having recovered a judgment.

### Conclusion

Taking these factors into consideration, the court concludes that it would be inequitable and that Congress did not intend to allow the Special Fund a lien in the full amount of its compensation payments in a case such as this. The Special Fund is claiming a full lien for its payments even though by law its liability for the payments is restricted to whatever monies it has on hand. Moreover, only 50% of the Special Fund's payments arise out of the accident for which plaintiff recovered his judgment; the other half arises out of his subsequent accident which resulted in his permanent total disability. Therefore, recognition of a lien on behalf of the Special Fund to the extent of 50% of the payments would be equitable to all parties.

Plaintiff's judgment including costs amounts to $19,678.36. There must first be deducted the Travelers Insurance Company compensation lien of $3,896.63, and plaintiff's costs and legal fees of $8,080.09, leaving a balance of $7,701.64. Half of the payments made out of the Special Fund up to December 31, 1969 amount to $5,610.86, and the lien of the Special Fund is allowed in this amount. Deducting the amount of the lien from $7,701.64 leaves a balance of $2,090.78. Since half of the Special Fund's payments are attributable to the injury for which plaintiff recovered his judgment, his payments from the Special Fund will be reduced by half, as of January 1, 1970, to $27 per week until the aforesaid balance of $2,090.78 with a 6% interest factor, has been exhausted. Thereafter, his payments from the Special Fund, assuming it has monies at hand, will resume their original rate of $54 per week.

Counsel will settle an order in accordance with this Memorandum, with any appropriate adjustments in computation as of the effective date of the order.

Settle order on notice.