Gorman CARTER, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 83–2056.

United States Court of Appeals, District of Columbia Circuit.

Argued May 29, 1984.

Decided Jan. 11, 1985.

Kevin B. Byrd, Washington, D.C., with whom Mark L. Schaffer, Washington, D.C., was on the brief, for petitioner.

Steven J. Mandel, Atty. Dept. of Labor, Washington, D.C., with whom Karen I. Ward, Associate Sol. and Mary-Helen Mautner, Counsel, Dept. of Justice, Washington, D.C., were on the brief, for respondent.

Before BORK, SCALIA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

This is a petition for review under 33 U.S.C. § 921(c) (1982) of a decision of the Benefits Review Board affirming a decision of the Office of Workers' Compensation Programs denying reinstatement of suspended benefits for a work-related injury that increased a preexisting permanent partial disability to a permanent total disability. The issue is whether the Special Fund established by the Longshoremen's and Harbor Workers' Compensation Act is entitled to offset, against the amounts due from it with respect to such an injury, recovery that the covered employee has obtained from the third-party tortfeasor responsible for the injury.

I

On December 9, 1975, petitioner Gorman Carter, an employee of the Wood, Wire &

Metal Lathers' International Union, Local No. 9, sustained employment related injuries in an accident, for which he filed a compensation claim under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1982).[1] The Administrative Law Judge found that he was permanently totally disabled as the combined consequence of the accident and a pre-existing permanent partial disability.

Under the LHWCA, an employee who becomes permanently disabled as a combined result of a pre-existing condition and new work-related injuries recovers compensation from two sources: his employer, and a "Special Fund" established by Section 44 of the Act, 33 U.S.C. § 944. The Special Fund is funded by a combination of assessments upon employers or their insurers, compensation owed by an employer for which there is no surviving statutorily authorized beneficiary, fines, and a loan from the Treasury. 33 U.S.C. § 944(c). The general method for dividing liability between the employer and the Special Fund is that the employer provides compensation for that portion of the employee's disability due to the new injury, and the Special Fund for the rest. 33 U.S.C. § 908(f). But where, as here, the employee had previously been permanently partially disabled and the new injury renders him permanently totally disabled, the statutory formula is that the employer makes payments for 104 weeks, after which the Special Fund takes over the responsibility. *Id.* Applying this formula to petitioner's claim, the ALJ directed that Local No. 9 pay Carter compensation for 104 weeks beginning December 9, 1975, and that the Special Fund assume liability for the remainder of the compensation payments due after December 6, 1977.

The LHWCA permits the compensated employee to seek damages from any person (other than his coworkers and the employer) who was wholly or partially responsible for the work related injury, 33 U.S.C. § 933(a). Petitioner did so with regard to the December 9, 1975 accident, and settled his suit in May 1979 for $35,000. The manner in which the benefits of that settlement should be apportioned is the subject of this litigation.

The LHWCA provides that if an employee recovers damages from a third party, the employer's (or his insurer's) obligation to pay compensation is diminished by that amount. 33 U.S.C. § 933(f), (h). The employee will therefore retain only the excess, if any, of what he recovers over what his employer would be obligated to pay him. The statute contains no similar provision with regard to the Special Fund's ability to subtract tort recovery from its obligation. The settlement into which petitioner entered accordingly provided for $17,500 to be paid to Local No. 9's insurance carrier in settlement for its past compensation payments, $1,192.97 for expenses, $8,153.51 for attorney's fees, and $8,153.52 to be paid to petitioner. On July 13, 1979, the Director of the Special Fund notified petitioner by letter that he was suspending payments to petitioner effective after the most recent payment of June 20, 1979, until he had retained an amount equal to petitioner's net recovery of $8,153.52. Special Fund payments resumed in November 1979, after that amount had been withheld.

Petitioner filed a claim with the Office of Workers' Compensation Programs

---

**1.** At the time Carter filed his claim, the LHWCA, 33 U.S.C. §§ 901–950 (1976), covered individuals employed in the District of Columbia. D.C. Code Ann. §§ 36–501, 36–502 (1973). That coverage has since been replaced by the District of Columbia Workers' Compensation Act of 1979. D.C. Code Ann. §§ 36–301 to 36–344 (1981 & Supp.1984). Because Mr. Carter's claim was filed before the effective date of the new act, it is governed by the LHWCA. *See Stevenson v. Linens of the Week,* 688 F.2d 93, 95 n. 1 (D.C.Cir. 1982).

The LHWCA has recently been amended in respects that could affect the outcome here. *See* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, 98 Stat. 1639 (1984). Since, however, those amendments do not apply to prior awards, *see* § 28(a), 98 Stat. 1655, our discussion of the Act will, unless otherwise indicated, refer to the 1982 codification.

("OWCP") seeking to recover the withheld payments. The OWCP denied the claim, and the Benefits Review Board affirmed. Petitioner challenges this disposition, on the grounds that there is no statutory provision for the Special Fund to share in employee recoveries from third-party tortfeasors, and that the manner in which his payments were suspended violates the procedural guarantees of the Fifth Amendment's due process clause.

## II

The LHWCA provides that the Special Fund shall pay "the remainder of the compensation that would be due" after the employer has satisfied his obligation to compensate a claimant for 104 weeks. 33 U.S.C. § 908(f)(2). Respondent argues that this language permits the Special Fund to offset, because "the remainder of the compensation that would be due" means the amount the *employer* would owe, if he were paying compensation for the full period, rather than only 104 weeks. As the employer is permitted to offset third-party recoveries, the compensation "due" would be reduced by any amount recovered from third parties.

There is, however, an alternative interpretation. Petitioner suggests that "the remainder of the compensation that would be due" is simply the total compensation to which the employee is entitled under the statute, minus that paid by the employer. The employer's right to offset would then be exercised only over that portion of the compensation he actually owed.

The latter interpretation seems to us less strained, but the former is not textually precluded. We therefore turn to the other indications of statutory intent which the parties suggest are relevant. Petitioner points to those sections of the statute that provide very explicitly for offsetting by the employer and subrogation of his insurer to this right.[2] He argues, plausibly enough, that it would be passing strange to achieve an equivalent result elsewhere in the statute through the murky phrase "the remainder of the compensation that would have been due." Respondent, on the other hand, points to legislative history indicating that Congress has consistently tried to prevent the Act from having the effect of enabling double recovery by employees. Since that history is so central to the case, we set it forth in some detail.

When the LHWCA was originally enacted in 1927, it required employees to elect between accepting compensation under the statute or seeking damages from a responsible third party. If the employee accepted compensation, his right to damages was assigned to the employer. Longshoremen's & Harbor Workers' Compensation Act, ch. 509, § 33(a), (b), 44 Stat. 1424 (1927) (current version at 33 U.S.C. § 933(a), (b) (1982)). The statute thus expressly precluded double recovery by the employee. It did not, however, contain an express provision assigning the employee's cause of action to the employer's insurer, as opposed to the employer himself, if the insurer has paid the benefits to the employee—thus creating the possibility of double (or, more accurately, windfall) recovery by the employer. Nonetheless, in order to prevent "the consequence [of] ... double recovery ... which the statute is careful to avoid," the Supreme Court held that the insurer could sue the tortfeasor to obtain reimbursement for any payments it had made. *Aetna Life Insurance Co. v. Moses,* 287 U.S. 530, 542, 53 S.Ct. 231, 233, 77 L.Ed. 477 (1933). "Subrogation," it said, "is a normal incident of indemnity insur-

---

**2.** The provision concerning the employer's right to offset states:

    If the person entitled to compensation institutes proceedings [against a third person] ... the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable ... over the amount recovered against such third person.

33 U.S.C. § 933(f).

    The provision concerning the insurer states:

    Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section.

33 U.S.C. § 933(h).

ance," and "nothing in [the statute] indicates that the insurer is to be denied an indemnator's rights." *Id.* Congress codified this result five years later by adding a provision to the LHWCA subrogating an insurer who had assumed the payment of compensation to the rights of the employer. Act to Amend the Longshoremen's & Harbor Workers' Compensation Act, ch. 685, § 13, 52 Stat. 1164, 1168 (1938) (codified at 33 U.S.C. § 933(h) (1982)).

In the same year, Congress modified the LHWCA to limit provision for automatic assignment of the employee's right of action to cases in which the employee accepted compensation pursuant to a formal award rendered by the agency. Act to Amend the Longshoremen's & Harbor Workers' Compensation Act, ch. 685, § 12, 52 Stat. 1164, 1168 (1938) (current version at 33 U.S.C. § 933(b), (c) (1982)). (Formal award is the exception rather than the rule, applicable only to situations in which liability is contested, *see* 33 U.S.C. § 914(a) (1982)). This protected the employee against improvident acceptance of inadequate compensation, but it created a new double recovery problem, because the statute contained no provision entitling the employer to reimbursement for compensation he had paid when the employee had accepted it without a formal award and then recovered from a third party. Nonetheless, the courts uniformly construed the statutory scheme, in light of equitable principles of subrogation and the purpose of avoiding double recovery they saw in the Act, to require that the employer be reimbursed for his compensation payments out of the employee's recovery in a third-party action. *E.g., The Etna,* 138 F.2d 37, 39–41 (3d Cir.1943); *Fontana v. Pennsylvania*

*R.R.,* 106 F.Supp. 461, 462–63 (S.D.N.Y. 1952), *aff'd on opinion below sub nom. Fontana v. Grace Line, Inc.,* 205 F.2d 151 (2d Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). *See Bloomer v. Liberty Mutual Insurance Co.,* 445 U.S. 74, 79, 100 S.Ct. 925, 928, 63 L.Ed.2d 215 (1980).[3]

Insofar as respondent's desired interpretation of § 944 is concerned, the problem with appeal to this history of the statute is that it proves too much. At most, the rather unnatural interpretation of § 944 that respondent urges upon us would give the Special Fund a right to set-off. It would not give the Fund the right to sue the tortfeasor in its own behalf where the employee and the employer choose not to, or the right to impose a lien upon recovery for compensation payments already made. Yet it is precisely these two means of avoiding "double recovery" that the two lines of cases appealed to by respondent involved. Thus, if Congress intended to embody the "no double recovery" principle in § 944, it did so in a fashion that was not only murky but also highly incomplete.

For these reasons we reject respondent's interpretation of § 944. The same reasons, however, would seem to suggest that the Fund has an *implicit* right to set-off under the Act. Petitioner argues that such an implicit right is inconsistent with the *explicit* provisions for employer set-off and for insurer subrogation in § 933. "Inclusio unius," he says, "est exclusio alterius." That maxim has force, however, only when there is no apparent reason for the inclusion of one disposition and the omission of a parallel disposition except the desire to achieve disparate results. Here, however, another reason is

---

**3.** In 1959, Congress eliminated the feature of automatic assignment upon acceptance of a formal award, and provided instead that assignment occurs only if the employee does not sue the third party within six months. Act to Amend the Longshoremen's & Harbor Workers' Compensation Act, Pub.L. No. 86–171, § 33(a), (b), 73 Stat. 391 (1959) (codified as amended at 33 U.S.C. § 933(a), (b) (1982)). It preserved the employer's right to offset, however, § 33(f), 73 Stat. 392 (codified at 33 U.S.C. § 933(f) (1982)),

in order once again to avoid double recovery by the employee. *See* S.Rep. No. 428, 86th Cong., 1st Sess. 2, *reprinted in* 1959 U.S.Code Cong. & Ad.News 2134, 2135; H.R.Rep. No. 229, 86th Cong., 1st Sess. 4 (1959). In addition a statement from the Senate Committee on Labor & Public Welfare read into the record of the floor debate explicitly endorsed the judicial glosses placed on the statute on the subject of employers' liens. 105 Cong.Rec. 12,674 (1959).

evident: The section subrogating insurers to employers' rights—including employers' set-off rights—is merely a codification of earlier court decisions applying traditional equitable principles they thought implicit in the statutory scheme. It would be perverse to say that that codification is a repudiation rather than an affirmation of the proposition that those equitable principles *are* implicit, prohibiting rather than sanctioning further judicial elaboration along the same lines. That is assuredly the view taken by those cases, decided after the insurer-subrogation amendment, which subrogate employers to employees' rights to the extent of compensation payments made without formal award. *See, e.g., The Etna* and *Fontana v. Pennsylvania R.R., supra.* We are persuaded that Congress intended to permit the federal courts to continue leavening the LHWCA with well established equitable principles as necessary to avoid the problem of double recovery and to prevent the statute from becoming a scheme for compensating tortfeasors instead of their victims. It is necessary to posit such an intent not only with regard to the Special Fund but even with regard to more basic features of the Act. For example, while the Act explicitly provides for return to the employee of excess recovery in suits by the employer as assignee of the tort claim, § 933(e), and for *set-off* against the employer's liability of recovery by the employee when the employee chooses to sue the tortfeasor, § 933(f), it does not explicitly provide for the employer's *reimbursement* out of the employee's tort recovery for compensation already paid before that recovery is obtained. A lien for such reimbursement is imposed on the recovery, however—as normal equitable principles of unjust enrichment dictate. *See, e.g., Ruggiero v. Rederiet for M/S Marion,* 308 F.Supp. 798, 800 (S.D.N.Y.1970). And of course denying equitable subrogation with respect to compensation paid without formal award, *see The Etna, supra,* would frustrate the clear statutory intent that compensation be paid "promptly, ... without an award, except where liability ... is controverted." 33 U.S.C. § 914(a).

The only court which has previously considered the precise issue of double recovery that is before us here agrees with this view. In *Ruggiero v. Rederiet for M/S Marion, supra,* a jury had awarded the claimant damages against a third-party tortfeasor, and the United States sought to impress a lien on the judgment to the extent of compensation payments already made to him from the Special Fund. Despite the absence of explicit provision for such a lien, the court permitted the Special Fund to recover on the basis of the equitable doctrine of subrogation. 308 F.Supp. at 800–01.

State courts interpreting similar state statutes have concluded that recoveries from third-party tortfeasors decrease the liability of state special funds. The most notable instance, because it dealt with the New York statute upon which the LHWCA was based, is *Dougherty v. J.F. Quakenbush Waverly Stage Co.,* 10 A.D.2d 125, 128, 197 N.Y.S.2d 658, 660–61 (1960). *See also Bello v. Commissioner of Department of Labor & Industry,* 56 N.J. 41, 45, 264 A.2d 222, 224 (1970); *Cole v. Morris,* 409 S.W.2d 668, 669–71 (Mo.1966).

Petitioner relies on *Crescent Wharf & Warehouse Co. v. Barracuda Tanker Corp.,* 696 F.2d 703 (9th Cir.1983), which rejected the proposition that traditional equitable principles are implicit in the LHWCA. We must disagree with this particular basis for the Ninth Circuit's decision. Its opinion on the point relies heavily upon the Supreme Court's opinion in *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), which held that a cause of action could not be implied under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e–17 (1982), or the Equal Pay Act, 29 U.S.C. § 206(d) (1982), on behalf of a company held liable in damages for having violated the Act, against a union which allegedly coerced the violation. That seems to us not at all comparable. Disallowing a cause of action over against the alleged coercer of a Title VII or Equal Pay Act violation in no way

impairs the Act's principal purpose of discouraging discrimination by the employer; in fact, it is arguably *necessary* for that purpose, since an employer confident of recovering for coercion will be more likely to yield to it. By contrast, disallowing subrogation under the LHWCA where equitable principles would normally provide it changes the whole function of the statute in those cases from compensation of injured employees to exoneration of tortfeasors. Moreover, the brief portion of *Crescent Wharf* devoted to this point does not even mention, and we must assume the court was unaware of, the long history of subrogation found implicit in the LHWCA that we consider so persuasive here.

### III

■ What we have said thus far establishes to our satisfaction that equitable principles of subrogation continue to apply with regard to payments made by the Special Fund. There remains one further issue, however: whether those principles would permit set-off of the particular Fund payments at issue here.

It is not the policy of the Act that the injured employee should receive no more than the compensation the Act prescribes when the injury is caused by the negligence of someone other than the employer or his coworkers. *See* 33 U.S.C. § 933(i). If he sues for such negligence himself, he is entitled to retain the excess of his recovery over the compensation payments, *cf.* § 933(f), and if the employer sues as assignee of the negligence claim, the recovery in excess of the compensation payments (less one-fifth of the total recovery) must be returned to the employee, § 933(e).

To the extent, then, that any payments are compelled out of the employee's tort recovery which go beyond reimbursing the employer or the Fund for payments attributable to the injury to which that recovery related, rather than equity being done the clear principles of the Act are being violated. The problem that presents in this case can be simply stated: The recovery in which the Fund seeks to participate reim-

bursed Carter for the harm he suffered in the December 9, 1975 accident—harm which changed his condition from permanent partial disability to permanent total disability. If this was the same harm for which the Fund was to make compensation, there is no doubt that established equitable principles would permit set-off. But in fact, the Fund and the last employer, in combination, are compensating Carter for *more* than that—*i.e.*, for the entire amount of his disability, including not only the increment between partial and total disability, but the partial disability as well. In these circumstances, how can it be said what portion of the total compensation is attributable to the incremental disability and therefore can be offset against the recovery for that increment?

The thought that comes immediately to mind is that only the *employer's* payments—for the first 104 weeks—are attributable to the incremental injury since, after all, that injury is the only justification for assessing the employer. (This appears to have been the theoretical approach taken by the New York courts, *see Mastrodonato v. Pfaudler Co.*, 307 N.Y. 592, 596, 123 N.E.2d 83, 86 (1954).) But while this reasoning might establish that *all* of the employer's payments are attributable to the incremental injury, it does not establish that *none* of the Fund's are. There is no suggestion in the legislative history that employer compensation for 104 weeks was settled upon because it was thought to represent an estimate of the "average" proportion of the total disability attributable to the incremental injury. To the contrary, it is likely that the figure was thought to let the employer off with less than he should properly bear, since the whole purpose of this provision was to encourage employment of the handicapped. *C & P Telephone Co. v. Director, OWCP*, 564 F.2d 503, 511 (D.C.Cir.1977).

The court in *Ruggiero, supra,* sought to solve the difficulty in another fashion. That case, unlike this one, involved an employee's tort suit relating to the *earlier* injury that had caused permanent partial

disability, and that had been followed eight months later by another injury rendering the disability total. The court had before it (as we do not) a specific finding in the Compensation Order that the accident on which the negligence suit was brought contributed 50 percent to the employee's permanent total disability. Half of the Fund's payments, it reasoned, must be attributable to that accident, and therefore half of them should be reimbursed out of the tort recovery. Even if we had the relevant percentage before us, however, this approach would not achieve a precise subrogation in the present case. At the time of *Ruggiero* the statutory scheme was that the first employer would pay for the permanent partial disability attributable to the first injury, the second employer for the permanent partial disability attributable to the second injury, and the Fund for the difference between the sum of these two and the amount due for permanent *total* disability. 308 F.Supp. at 799. It could genuinely be said, therefore, that the Fund's payments were attributable to the two accidents in precisely the proportion of their respective contributions to the permanent total disability. That cannot be said under the current scheme, which makes the second employer liable, not for the permanent partial disability caused by the second accident, but for 104 weeks *of the permanent total disability payments,* and the Fund for the remainder. Under this arrangement, the residual liability of the Fund cannot be said to be attributable to the two accidents in proportion to their contribution to the total disability, unless the second employer's 104-weeks payments are similarly allocable. But we know of no case denying the second employer 100 percent reimbursement out of recovery *for the second accident.* This seems to be prescribed by the provision for full assignment of the claim, § 933(b). Moreover, any other rule would mean that an employer could not obtain full reimbursement of his total disability payments for a handicapped worker when he would be able to do so for a nonhandicapped worker—which seems directly contrary to the whole purpose of the Special Fund assumption of liability for injuries increasing preexisting disability, *i.e.,* the purpose of rendering hiring of the handicapped more attractive.

In sum, while equitable principles may entitle the Special Fund to reimbursement out of tort recovery with respect to some of its other disbursements under the Act—for example, its payment of the sums due from an insolvent employer, § 918(b)—we see no application for them here. Some portion of the Special Fund's payments must be attributable to the injury for which this tort recovery has been awarded, but it is quite impossible to say what that portion might be, and therefore quite impossible to say that Congress expected us to require reimbursement of that portion on the basis of accepted equitable principles. As it turns out, in fact, the judicial notion of an equitable result is not what Congress intended—or at least not what the current Congress intends. A recent amendment to the LHWCA, effective September 28, 1984, but not applicable to already adjudicated claims such as the one here at issue, provides that "[a]ny payments by the special fund ... shall be a lien upon the proceeds of any settlement obtained from or judgment rendered against a third person [liable in damages]." Longshore & Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 21, 98 Stat. 1652–53 (1984). This evidently requires the employee to reimburse, out of his recovery for the second accident alone, even those payments of the Fund attributable to the first accident.

\* \* \* \* \*

Since the express provisions of the statute cannot reasonably be read to permit set-off by the Special Fund; and since there is no basis for application of the equitable principles of subrogation implicit in the statute; the suspension of payments by the Director was invalid. Because petitioner is entitled to relief on the merits, we need not consider his allegations of procedural deficiencies.

*Petition granted.*