**John E. BROWN, Petitioner,**

v.

**I.T.T./CONTINENTAL BAKING COMPANY AND INSURANCE COMPANY OF NORTH AMERICA and Lawrence W. Rodgers, Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Respondents.**

**No. 89–1592.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1990.

Decided Dec. 11, 1990.

---

Michael V. Kowalski, Washington, D.C., for petitioner.

Elizabeth Haegelin Hall, Washington, D.C., for respondents ITT/Continental Baking Co. and Ins. Company of North America.

Marianne Demetral Smith, Atty., Dept. of Labor, Washington, D.C., for respondent Office of Workers' Compensation Programs. Carol A. DeDeo and Karen B. Kracov, Washington, D.C., were on the brief for respondent Office of Workers' Compensation Programs. John Jeffrey Ross, Atty., Dept. of Labor, Washington, D.C., also entered an appearance for respondent Office of Workers' Compensation Programs.

Before WILLIAMS, D.H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

In this action, we review the ruling of the Benefits Review Board of the Department of Labor (Board) affirming the denial by the Administrative Law Judge (ALJ) of the petitioner's claim for temporary total disability benefits under the Longshore and Harbor Workers' Compensation Act (the Act), 33 U.S.C. §§ 901 *et seq.*, as extended to the District of Columbia by 36 D.C.Code §§ 501 *et seq.* Our review of the record leads us to conclude that, with respect to the first of the petitioner's claims, the Board exceeded its authority when it affirmed the ALJ's ruling based on a ground the ALJ had not reached in his decision. With respect to the petitioner's second claim, we hold that the ALJ failed to analyze the evidence on the question of causation within the framework of the Act's presumption in favor of the claimant. In light of these conclusions, we reverse the Board's decision and remand the cause for further action consistent with the discussion that follows.

I.

The claimant/petitioner, John Brown, suffered two separate accidents involving his right arm that are relevant to this action. On June 8, 1981, at his job as a sanitation worker at respondent Continental Baking Company in Washington, DC,[1] Brown hurt his right elbow while breaking down boxes for trash removal. J.A. 15–16, 170. He sought medical attention at the Northeast Industrial Clinic (Clinic) and, after taking x-rays of his elbow, a doctor there informed Brown he had suffered a "slight sprain" of his elbow. J.A. 16. The doctor interpreted the x-rays as "show[ing] evidence of degenerative changes, otherwise negative." J.A. 94. Brown sought further treatment for his elbow in August 1981, and again in January 1982, but, during that time, he filed no claim for compensation under the Act. J.A. 16–18.

Brown's second accident occurred on May 10, 1982, when he ran his hand into a bread cooler while attempting to sweep under it. J.A. 19, 171. At that time, Brown fractured his right thumb and, he claims, reinjured his right elbow. He again went to the Clinic for treatment and doctors there placed his hand in a cast that extended from his fingers to just below his elbow. J.A. 19. Brown filed a claim for compensation in connection with the May 1982 accident on September 28, 1982. This claim stated that he had sustained injuries to

---

1. The respondents are Brown's employer, Continental Baking Co., and its workers' compensation insurance carrier, the Insurance Company of North America. Although the Director of the Office of Workers' Compensation Programs of the Department of Labor is also before the court as a respondent, he urges reversal of the Board's decision.

both the hand and the elbow of his right arm. J.A. 56.

After the cast was removed, Brown continued to experience pain and swelling in his hand and, in November 1982, he began seeing Dr. Moskovitz, an orthopedic surgeon, for his condition. In December 1982, Moskovitz surgically removed a bone spike that had been causing the discomfort in Brown's hand. In January 1983, Moskovitz saw Brown for the last time in connection with the hand injury. At that time, Moskovitz determined that, unless new problems developed, it was unnecessary for Brown to return for further treatment. Eleven months later, in December 1983, Brown returned to Moskovitz, complaining of pain in his elbow. J.A. 22. Although Moskovitz testified in his deposition that Brown had complained of elbow pain during earlier visits, no mention of the condition appears in Moskovitz's notes until the December 1983 visit. J.A. 111–113. During this December visit, Moskovitz took x-rays of Brown's elbow and they revealed "post-traumatic osteoarthritis with multiple loose bodies." J.A. 73. It was only after this examination of his elbow that Brown, on December 9, 1983, filed a claim for the 1981 accident.

In 1984, Brown sought treatment for his elbow pain from Dr. Moskovitz seven times. During April of that year, Moskovitz diagnosed damage to a nerve running along the inside of Brown's elbow. In his deposition, Moskovitz testified that the scar tissue from the sprain, as it constricted, began to tighten around the nerve, causing pain in the fingers and weakness in the grip. J.A. 118. In March 1984, Brown lost his job at Continental Baking because of his poor attendance record. In February 1985, shortly before the administrative hearing in this case, Moskovitz operated on Brown's elbow to relieve pressure on the nerve.

After a hearing on Brown's claims, the ALJ held that the 1983 claim for the 1981 accident was time-barred. Finding first that Brown was "immediately aware" his 1981 accident was job-related, the ALJ concluded that the claim was subject to the Act's limitations provision.[2] J.A. 172. The ALJ also concluded that Brown could not recover for his elbow condition by way of his timely claim for the 1982 accident. In reaching this decision, the ALJ pointed to the lapse of nineteen months between the second accident and Brown's request for treatment for his elbow and to the deposition of Dr. Epps who testified, after reviewing Dr. Moskovitz's records, that Brown would have suffered arthritic degeneration in his elbow regardless of the accident. Based on this evidence, the ALJ held that the 1982 accident neither contributed to nor aggravated Brown's elbow condition. J.A. 173. In sum, the ALJ held that Brown's claim for the 1981 accident was untimely and that Brown had failed to establish the requisite causal link between his elbow condition and the 1982 accident. Brown appealed to the Board.

The Board did not address the question of whether Brown's 1983 claim for the 1981 accident was time-barred. J.A. 177. Instead, it affirmed the ALJ's denial of benefits on the ground that Brown had failed to establish either of his accidents had caused his elbow condition.[3] Id. This petition for review followed.

## II.

As a preliminary matter, we briefly consider the standard of review this court applies to a petition for review of a Benefits Review Board ruling. By the terms of the Act, the Board treats the ALJ's findings as "conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). While the Act does

---

2. In his order, the ALJ noted that Brown filed his claim "well beyond one year from the date of the accident and well beyond a year from the termination of compensation by Continental." J.A. 172. His decision, however, turns solely on the limitations provision's requirement that claims be filed within one year of injury.

3. One Board member dissented from the Board's decision that Brown had failed to establish a causal connection between the 1981 accident and his elbow condition, characterizing the Board's conclusion as "impermissibl[e] ... fact-finding." J.A. 178.

not prescribe the limits of our authority when reviewing the Board, this court and others have held that a court of appeals may reverse a Board ruling only for errors of law or when the Board has exceeded the scope of its authority in its review of the ALJ. *Stark v. Washington Star Co.*, 833 F.2d 1025, 1027 (D.C.Cir.1987); *Stevenson v. Linens of the Week*, 688 F.2d 93, 96–97 (D.C.Cir.1982); *Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234, 237 (3d Cir.1979). "In order to decide whether the Board has properly adhered to its scope of review, however, we must conduct an independent review of the record to determine whether the ALJ's findings are supported by substantial evidence." *Stark*, 833 F.2d at 1027.

## III.

■ We turn now to the first portion of the ruling before us—that dealing with Brown's 1983 claim for the harm he sustained as a result of the 1981 accident. A comparison of the ALJ's decision denying the claim and the Board's decision affirming the ALJ reveals that the Board exceeded its authority in reviewing the ALJ and we therefore reverse.

In his analysis of Brown's claim, the ALJ applied section 13(a) of the Act:

Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore [sic] is filed within one year after the injury or death.... The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913(a). He held that, because Brown was "immediately aware" his injury was job-related, the Act required the claim therefor be filed within one year of the date of the injury. J.A. 172. While the ALJ determined that the medical evidence failed to support the conclusion that the second accident caused Brown's elbow condition, he reached no such conclusion with respect to the first accident. J.A. 173. Indeed, after addressing the issues raised by the 1982 accident, the ALJ returned to the first accident and explicitly premised his decision on the limitations provision in the Act: "As has already been mentioned herein, *a claim founded upon that incident is time-barred* despite Claimant's attempt to characterize his injury as latent." J.A. 173–74 (emphasis added). Although respondent employer argues that the ALJ found in the alternative that Brown's 1981 accident was not causally related to his elbow condition, this is simply not the case; the decision on the 1981 accident rests entirely on the Act's limitations provision.

In its review of the ALJ, the Board declined to address the Act's limitations provision. Instead, the Board affirmed the ALJ's denial of the claim on the causation ground: "We need not address claimant's argument that the administrative law judge erred in finding the claim for the 1981 injury barred by the statute of limitations because we affirm the administrative law judge's finding that claimant's present condition is not caused by his employment." J.A. 177. In reaching the unaddressed question of causation, the Board exceeded the scope of its review. Instead of ascertaining whether the ALJ's decision was supported by "substantial evidence in the record considered as a whole," 33 U.S.C. § 921(b)(3), the Board made new findings of fact. In so doing, it outstripped its statutorily conferred authority and we reverse with respect to Brown's 1981 accident.

■ Because the Board's decision on the 1981 accident does not address the basis of Brown's appeal from the ALJ's ruling— namely the ALJ's treatment of the limitations issue—we would ordinarily remand this issue for further consideration. Here, however, the circumstances justify a merits review of the ALJ's application of the Act's limitations provision. The parties have fully briefed and argued the issue and we reach it in order to achieve a timely resolution of this litigation. *See Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 465–66, 88 S.Ct. 1140, 1144–45, 20 L.Ed.2d

30 *reh'g denied,* 391 U.S. 929, 88 S.Ct. 1800, 20 L.Ed.2d 671 (1968) (deciding issue fully briefed but not reached by the court of appeals "in order to bring this litigation to a close"); *see also United Brands Co. v. Melson,* 594 F.2d 1068, 1072 n. 10 (5th Cir.1979) (rejecting argument that statutory authority to "affirm[ ], modify[ ], or set[ ] aside, in whole or in part, the order of the Board," 33 U.S.C. § 921(c), renders court "unable to decide an issue not reached by the Board"); *Todd Shipyards Corp. v. Director, OWCP,* 848 F.2d 125, 127 n. 3 (9th Cir.1988).

■ The ALJ ruled that Brown's claim for the 1981 accident was time-barred solely because he "was immediately aware that both injuries were job-related." J.A. 172. We read the ALJ's decision to mean that, merely because Brown knew that he had suffered an accident at work, the one-year filing period began to run. This interpretation of the statute is incorrect. In *Stancil v. Massey,* 436 F.2d 274 (D.C.Cir.1970), we considered the issue of when a claimant becomes aware "of the relationship between the injury ... and the employment," 33 U.S.C. § 913(a), so that the Act's limitations period begins to run. We held there that it is only after the claimant knows or should have known that the accident he has suffered will probably impair his ability to earn his previous wage that an "injury" arises within the meaning of the Act. *Stancil,* 436 F.2d at 277; *see also Bechtel Assocs., P.C. v. Sweeney,* 834 F.2d 1029, 1033 (D.C.Cir.1987) ("limitation period begins only when the employee knows or should know that (1) his injury is causally related to his employment and (2) his injury is impairing his capacity to earn wages").

The issue for determination then is "whether the employee reasonably believed that he ... had suffered a work-related harm which would probably diminish his capacity to earn his living." *Stancil,* 436 F.2d at 279. In *Stancil,* we held that the misdiagnosis of the claimant's herniated discs as back strain provided a basis for his belief that his condition would improve and would not impair his earning capacity and the limitations period for the filing of his claim therefore did not begin to run until his condition was correctly diagnosed. *Id.* at 278; *see also, Bechtel,* 834 F.2d at 1032–33 (upholding ALJ's award of benefits because, although claimant had known for several years that he suffered from work-related pulmonary condition, "he had no reason to believe that this disease would decrease his earning power until [his doctor] recommended he retire"); *Brown v. Jacksonville Shipyards, Inc.,* 893 F.2d 294, 296 (11th Cir.1990) (holding relevant inquiry is when claimant "realize[d] that he had suffered an injury which would impair his earning power").[4]

■ It is possible Brown was reasonably unaware his elbow condition would affect his ability to earn his previous wage until shortly before he filed his claim for compensation. Without expressing an opinion on the final determination of this factual question, we note that evidence exists in the record from which the ALJ could have determined that, before the December 1983 visit to Dr. Moskovitz's office, Brown reasonably believed his elbow pain was attributable merely to the original sprain and would therefore not adversely affect his earning capacity.[5] As our discussion above

---

**4.** This interpretation of the Act's limitations provision is consistent with the liberality with which courts have construed the Act. The Supreme Court has stated that the Act "should be liberally construed in conformance with its purpose and in a way which avoids harsh and incongruous results," *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 92, 98 L.Ed. 5 (1953), and has recognized the general "humanitarian nature" of the Act. *See O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965). Similarly, we have held that the Act is to be construed with an eye to its "beneficent purposes."

*Friend v. Britton,* 220 F.2d 820, 821 (D.C.Cir.), *cert. denied,* 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955).

**5.** Several parts of the record could support a finding that, at the time of the 1981 accident and for some time thereafter, Brown was unaware he had suffered an injury that would impair his ability to earn his previous wage. At the time of the accident, the treating doctor at the Northeast Industrial Clinic noted only slight degenerative changes on the x-rays of Brown's elbow. He indicated the elbow was otherwise normal. J.A. 94. Brown testified that immedi-

indicates, it is this question that must be decided in order to determine the applicability of the Act's limitations provision. Accordingly, we remand this issue with directions to ascertain at what point Brown knew or should have known that his elbow condition would affect his ability to earn his previous wage. Only if he was or should have been aware of the effect of his condition on his earning capacity at some point more than one year before he filed his claim will the Act's limitations provision operate to bar compensation for the 1981 accident.

## IV.

■ Next, we address Brown's contentions regarding the ALJ's and the Board's treatment of his timely claim for his 1982 accident. Brown urges reversal based on the Act's presumption in favor of the employee. Section 20 of the Act provides that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary ... [t]hat the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a). We have held that this presumption, a manifestation of the Act's "humanitarian nature," *see* note 4, *supra*, operates in favor of the claimant on the issue of whether a work-related accident has caused or aggravated the condition for which he claims compensation. *Hensley v. Washington Metro. Area Transit Auth.*, 655 F.2d 264, 267 (D.C.Cir.1981), *cert. denied*, 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982); *Swinton v. Kelly*, 554 F.2d 1075, 1082 (D.C.Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976).

■ The Board's decisions recognize that the section 20 presumption as it relates to causation arises once the employee demonstrates (1) he has suffered some harm and (2) a work-related accident occurred that could have either caused the harm, or aggravated or accelerated a previous condition. *See Cairns v. Matson Terminals, Inc.*, 21 Ben.Rev.Bd.Serv. (MB) 252, 253, BRB No. 84–2364 (1988). If a claimant satisfies the criteria that trigger section 20's presumption, it operates in his favor until the employer comes forward with "substantial evidence" to rebut it. *Hensley*, 655 F.2d at 267. In keeping with the Act's purposes, the ALJ must resolve doubtful questions of fact in favor of the claimant. *See Bechtel Assocs., P.C. v. Sweeney*, 834 F.2d 1029, 1035 (D.C.Cir. 1987); *Stevenson v. Linens of the Week*, 688 F.2d 93, 98 (D.C.Cir.1982); *Hensley*, 655 F.2d at 267; *Wheatley v. Adler*, 407 F.2d 307, 313–14 (D.C.Cir.1968). If the employer is able to meet its burden in rebuttal, the presumption "falls out of the case." *Del Vecchio v. Bowers*, 296 U.S. 280, 286, 56 S.Ct. 190, 193, 80 L.Ed. 229 (1935); *Hensley*, 655 F.2d at 267. The presumption "cannot acquire the attribute of evidence in the claimant's favor," and once the employer successfully rebuts it, the factual question of causation "must be resolved upon the whole body of proof pro and con." *Del Vecchio*, 296 U.S. at 286–87, 56 S.Ct. at 193.

■ We conclude that the ALJ failed to analyze the evidence before him within the framework of the Act's presumption. The relevant portion of the ALJ's decision states:

> It is Claimant who bears the burden of proving that he sustained physical harm from a job-related accident. Claimant has not met his burden here. Indeed, Employer has introduced substantial evidence establishing that the 1982 injury did not aggravate or contribute to a pre-existing condition.

J.A. 173. By placing the burden of proof on the employee, the ALJ ignored the Act's presumption in favor of coverage. Once the minimal requirements of establishing a

---

ately after the accident the Clinic doctor diagnosed only a "slight sprain" and prescribed medication and "a little therapy." J.A. 16. When Dr. Moskovitz began treating Brown in November 1982, he also initially treated the elbow injury as a sprain, prescribing only "mild medi-

cation and ... some gentle exercises." J.A. 117. From the doctors' reactions to Brown's condition, the ALJ could conclude that Brown reasonably failed to foresee a diminution in his earning capacity.

prima facie case have been met, the employee is entitled to the benefit of that presumption.[6] Even if the presumption is overcome, the burden of proof does not then rest with the employee; instead the ALJ must weigh all of the evidence, finding for the employee when the evidence on each side is equal. The ALJ's approach may have led to doubts being resolved in the wrong direction. We therefore remand Brown's 1982 accident claim for further consideration under the framework of the Act. The claimant has adduced evidence sufficient to create the presumption, and the employer has successfully rebutted it. The question on remand is thus whether the employer's evidence establishes that Brown's elbow condition is not causally related to the 1982 accident.

### V.

To sum up, on remand the ALJ must first determine when Brown knew or reasonably should have known that his 1981 accident would affect his ability to earn his previous wage. If the ALJ determines Brown came to this realization within a year of the time he filed his claim for that accident, the ALJ must then ascertain whether the 1981 accident caused or contributed to Brown's elbow condition.[7] With respect to Brown's claim for the 1982 accident, our decision requires the ALJ to weigh the evidence using the Act's presumption in favor of the employee on the

question of causation. Brown is entitled to the benefit of the presumption and the employer has rebutted that presumption. Accordingly, the question remaining on remand as to the 1982 accident is whether or not the evidence as a whole supports coverage. So that the ALJ may undertake the inquiries we have directed, this cause is

*Reversed and Remanded.*

---

**6.** *See Hensley,* 655 F.2d at 268 (claimant need only show *"potential* connection between the disability and the work environment") (emphasis in original); *Swinton,* 554 F.2d at 1081–83 (presumption of causation of employee's later disability arose from evidence showing only he had suffered an earlier accident).

Confusion regarding the application of the presumption may have arisen because of the way the presumption criteria have been stated. In *Cairns v. Matson Terminals, Inc.,* 21 Ben.Rev. Bd.Serv. (MB) 252, BRB No. 84–2364 (1988), the Board stated that "[b]efore the administrative law judge may properly apply the presumption, claimant must establish a *prima facie* case by showing that he suffered harm and either that a work-related accident occurred or that conditions existed which could have caused the harm." *Id.* at 253 (citing *Keliata v. Triple A Mach. Shop,* 13 Ben.Rev.Bd.Serv. (MB) 326 (1981)). The ALJ may have interpreted this

formulation of the presumption criteria to require him to weigh the causation evidence before he invoked the presumption. This interpretation is incorrect. In order to come within the section 20 presumption, all the claimant need adduce is *some* evidence tending to establish *the prerequisites of the presumption.* Brown met this threshold burden with Dr. Moskovitz's deposition testimony that Brown's work accidents caused his elbow condition. At that point, the ALJ should have examined the employer's evidence to determine whether it was sufficient to rebut the presumption.

**7.** In light of our disposition of Brown's claim based on his 1981 accident, we need not reach his contention that the limitations period did not begin to run because respondent Continental Banking Co. never filed the post-accident report required by section 30(a) of the Act, 33 U.S.C. § 930(a).