**EVANS FINANCIAL CORPORATION and Property Casualty Insurance Guaranty Corporation, a/s/a Ideal Insurance Company, Petitioners**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, et al., Respondents**

**No. 97–1427.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 20, 1998.

Decided Nov. 6, 1998.

Jeffrey W. Ochsman argued the cause and filed the briefs for petitioners.

LuAnn Kressley argued the cause for respondents. With her on the brief were Marvin Krislov, Deputy Solicitor, and Carol A. De Deo, Associate Solicitor, U.S. Department of Labor. Timothy D. O'Hara entered an appearance.

Before: WILLIAMS, SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Carolyn Lee O'Brien hurt her back in the course of her work for petitioner Evans Financial Corporation, a District of Columbia employer. She filed a claim for workers' compensation and received an award of permanent total disability benefits. The award required Evans Financial to pay both medical expenses and disability benefits for a time, and thereafter to continue to pay O'Brien's medical expenses. O'Brien also sued the owner of the building in which she was injured and received a payment in settlement of that litigation.

O'Brien would like to keep the settlement payment she received from the building own-er, while requiring her employer to continue to pay her medical expenses. Evans Financial claims a credit against those expenses, up to the amount of O'Brien's net recovery from the settlement. The parties agree as to the law: the employer has a right to such a credit unless it waived that right. Because there is no evidence that a waiver occurred, we conclude the employer is entitled to the credit.

Evans Financial, however, would like a bit more. It seeks not only a credit, but complete relief from its obligation to pay O'Brien's medical expenses. It is entitled to such relief, the employer contends, because it has been prejudiced by O'Brien's assertion that it waived its right to a credit. We discern no such prejudice and decline to grant Evans Financial this additional relief.

**I**

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 ("the LHWCA" or "the Act"), governs workers' compensation claims made by private sector employees who were injured in the District of Columbia prior to 1982. Compensation awards for such claims are made by the Office of Workers' Compensation Programs ("OWCP") of the U.S. Department of Labor ("DOL"), with administrative review by DOL's Benefits Review Board. Judicial review of a Board order is available in this court. *See* 33 U.S.C. § 931(b)–(c); *Shea v. Director, OWCP*, 929 F.2d 736, 737 (D.C.Cir. 1991).[1]

O'Brien injured her back in 1980. On January 10, 1986, the OWCP's district director for Washington, D.C. awarded her permanent total disability benefits under the LHWCA. Under section 8(f) of the

---

**1.** Congress, acting as legislative authority for the District of Columbia, enacted the District of Columbia Workmen's Compensation Act of 1928, D.C.Code §§ 36–501, *et seq.* (1973). That Act made the provisions of the LHWCA applicable to private sector workers' compensation claims in the District. Although the 1928 Act was repealed by the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301, *et seq.*, the 1928 Act continues to govern claims arising from injuries that occurred before July 26, 1982. DOL continues to administer such claims, with judicial review in this court. The 1979 Act cov-ers claims arising from injuries occurring on or after July 26, 1982. Those claims are administered by the District of Columbia Department of Employment Services, with judicial review in the District of Columbia Court of Appeals. *See Shea v. Director, OWCP*, 929 F.2d 736, 737, 739 (D.C.Cir.1991); *Keener v. Washington Metropolitan Area Transit Auth.*, 800 F.2d 1173, 1175 (D.C.Cir.1986); *Durrah v. Washington Metro. Area Transit Auth.*, 760 F.2d 322, 324 n. 1 (D.C.Cir.1985); *Railco Multi–Constr. Co. v. Gardner*, 564 A.2d 1167, 1170–71 (D.C.1989).

LHWCA, 33 U.S.C. § 908(f), after 104 weeks the responsibility to pay such benefits may, under certain circumstances, be shifted from the employer to a Special Fund established by the Act.[2] Pursuant to section 8(f), the district director ordered Evans Financial[3] to pay permanent total disability benefits for 104 weeks, and directed the Special Fund to make the payments thereafter. The order required Evans Financial, however, to continue to pay O'Brien's medical expenses. Joint Appendix ("J.A.") 40–41 (Compensation Order).

■ In addition to providing compensation benefits, the LHWCA permits an employee to sue a third party who caused or contributed to her injury. *See* 33 U.S.C. § 933. There is no dispute as to the law governing any recovery obtained in such a suit. *See* Pet. Br. at 5–6; Resp. Br. at 6–12. The employer has the right to reduce its liability by the amount of the employee's net recovery from the third-party tortfeasor. *See* 33 U.S.C. § 933(f). This includes the right both to a recoupment lien for benefits the employer already has paid, and to a setoff or credit against payments for which it may be liable in the future. The lien and credit apply both to compensatory disability benefits and to medical expenses. Finally, the employer is entitled to exercise these rights unless it waives them. *See Evans Fin. Corp. v. Director, OWCP,* BRB No. 95–0783, at 4–5 (May 27, 1997) (J.A. 28–29); *see also Morauer & Hartzell, Inc. v. Woodworth,* 439 F.2d 550, 552 (D.C.Cir.1970); *Perry v. Bath,* 29 Ben. Rev. Bd. Serv. (MB) 57, 61 (1995); *Inscoe v. Acton Corp.,* 19 Ben. Rev. Bd. Serv. (MB) 97, 98–99 (1986), *aff'd,* 830 F.2d 1188 (D.C.Cir.1987) (table). According to the OWCP, an employer often will make such a waiver in order to give its employee some benefit from the recovery, and hence an in-

centive to enter into a settlement that will provide the employer with a reduction in its liability. *See* Resp. Br. at 7, 11.

O'Brien pursued a third-party claim against the owner of the building in which she was injured. The suit was settled in 1987 for $275,000. From that total, $91,500.00 was subtracted for attorney's fees, and $3,822.35 for other costs. Evans Financial asserted a recoupment lien of $92,950.00 against the remaining $179,677.65, based on the compensation it had paid O'Brien for the first 104 weeks of her disability. Evans Financial agreed, however, to reduce its lien by $12,500 and to accept $80,450. After that amount was deducted, $99,227.65 remained from the settlement. All agree that $44,227.65 of that amount is subject to the Special Fund's own setoff, *see* J.A. 51.

The instant controversy concerns the disposition of the remaining $55,000. Following the settlement, O'Brien accrued additional medical bills totaling $1,160.50, which the OWCP submitted to Evans Financial for payment. The employer refused to pay these bills, asserting that it was entitled to a credit against them in the amount of the $55,000 O'Brien retained from the settlement.

The dispute between O'Brien and Evans Financial was referred to an administrative law judge ("ALJ") in 1994. The ALJ held that the employer was not entitled to a credit and hence was liable for the medical bills. The ALJ also awarded O'Brien's counsel attorney's fees, based on the successful litigation against the employer. *See* J.A. 22–24. Evans Financial appealed to the Benefits Review Board which, under the LHWCA, must regard the ALJ's findings of fact as "conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3); *see Burns v. Director,*

---

2. Section 44 of the LHWCA establishes a Special Fund financed by, *inter alia,* assessments on employers or their insurers. *See* 33 U.S.C. § 944. Section 8(f) shifts partial responsibility to the Special Fund when, among other things, an employee had a preexisting permanent partial disability which, combined with the instant injury, results in permanent total disability. *See id.* § 908(f). *See generally Carter v. Director, OWCP,* 751 F.2d 1398, 1399 (D.C.Cir.1985).

3. The various insurance companies associated with the employer included Ideal Insurance Company, Maryland Insurance Guaranty Association, and petitioner Property Casualty Insurance Guaranty Corporation. The employer's interests during most of the relevant period were represented by the insurance companies and their counsel. For ease of reference, we will refer to the employer and its insurers collectively as "Evans Financial" or "the employer," and to their counsel as "counsel for the employer."

*OWCP*, 41 F.3d 1555, 1562 (D.C.Cir.1994). In a 2–1 decision, the Benefits Review Board affirmed, holding that the employer had waived its right to a setoff against future medical expenses. *See* J.A. 25–30. Evans Financial then filed the instant petition for review.

■■■ Our review is limited to determining whether the Board adhered to its authorized scope of review and whether it committed any errors of law. *See Brown v. I.T.T./Continental Baking Co.*, 921 F.2d 289, 292–93 (D.C.Cir.1990). "In order to decide whether the Board has properly adhered to its scope of review ... we must conduct an independent review of the record to determine whether the ALJ's findings are supported by substantial evidence." *Id.* at 293 (quoting *Stark v. Washington Star Co.*, 833 F.2d 1025, 1027 (D.C.Cir.1987)). As we have said many times before, " 'substantial evidence' means more than a 'scintilla,' but less than a preponderance of the evidence." *Burns*, 41 F.3d at 1562 n. 10 (quoting *Whitmore v. AFIA Worldwide Ins.*, 837 F.2d 513, 515 (D.C.Cir.1988)).

## II

The parties agree that absent a waiver, an employer is entitled to both a lien for its past payments and a credit against future payments, in the amount of any net recovery received by an employee from a third party. The employer's lien rights are not at issue here, as Evans Financial agreed to a $12,500 reduction in those rights and received a lien for the remainder. The only question is whether Evans Financial waived its right to a credit against future medical payments. And the only question for this court is whether there was substantial evidence to support the conclusion that there was such a waiver.

The OWCP, which defends the decision of the Board in this court, contends that the evidence of waiver is contained in the "paper trail" that was before the ALJ and the Board. Resp. Br. at 13. We follow that paper trail below.

### A

On January 12, 1987, counsel for O'Brien wrote counsel for the employer to "confirm ... discussions" in which Evans Financial had agreed to reduce its right to a lien on the recovery O'Brien expected to receive from her third-party lawsuit. J.A. 44. The letter stated:

> To enable my client, Carolyn Lee O'Brien, to reach a tentative settlement ... , your client agreed to reduce its claimed lien by the sum of $12,500.00.... The amount of the lien claimed ... is $92,950.00. We have agreed that the amount to be placed in escrow shall be the sum of $92,950.00 less the $12,500.00 compromise, for a total of $80,450.00.

*Id.* Counsel for the employer signified its confirmation by counter-signing the letter. *Id.* at 45.

■■■ All agree that by this letter, and its confirmation, the employer waived its right to a lien for past payments in excess of the agreed-upon $80,450. It is clear that a lien and a credit are separate entitlements, and that an employer may waive one without waiving the other. *See, e.g., I.T.O. Corp. v. Sellman*, 954 F.2d 239, 244 (4th Cir.1992), *vacated and superseded on other grounds*, 967 F.2d 971 (4th Cir.1992); *Perry*, 29 Ben. Rev. Bd. Serv. at 61; *Kaye v. California Stevedore & Ballast*, 28 Ben. Rev. Bd. Serv. (MB) 240, 251–52 (1994); *Treto v. Great Lakes Dredge & Dock Co.*, 26 Ben. Rev. Bd. Serv. (MB) 193, 198–99 (1993). The parties agree that both attorneys well understood the difference between the two. Accordingly, because the January 12, 1987 letter mentioned the waiver of the employer's lien but did not mention the credit, the Board did not contend and the OWCP does not argue that the January 12 letter evidenced a waiver of the credit. We therefore must move on to the next document in the paper trail.

### B

On January 30, 1987, O'Brien's counsel again wrote counsel for the employer, this time to obtain its final consent to the settlement of the third-party lawsuit, as required by section 33(g) of the LHWCA, 33 U.S.C.

§ 933(g). *See* J.A. 48. The cover letter noted that a standard DOL consent form, Form LS–33, was enclosed for the employer's signature and return. The letter also stated that "the net proceeds due my client are laid out" in an attached January 13, 1987 letter O'Brien's counsel had sent to the Special Fund. *Id.* Nothing in the January 30 cover letter mentioned a waiver of the employer's credit.

Nor did the enclosed consent form contain any evidence of a waiver. It merely stated that the employer had been advised of, and had approved, the settlement of the third-party case for "the gross amount of $275,000 and the net amount of $99,227.65." J.A. 49. The form said nothing about the disposition of the $99,227.65, and it is quite clear that no one thought the entire amount was destined for O'Brien. At a minimum, the attached January 13, 1987 letter indicated, as discussed below, that $44,227.65 of that amount was subject to a setoff for the benefit of the Special Fund.

■ Although the Board did not regard the consent form itself as a waiver, it concluded that the employer waived its credit by consenting to the settlement and signing the form "[a]fter being notified of the specific agreement between claimant and the Special Fund" contained in the attached January 13, 1987 letter. Accordingly, we must now direct our attention to that letter.

In his January 13 letter to the Special Fund, O'Brien's counsel described the "settlement [that] has been reached in the third party case." J.A. 46. The letter explained that the total amount of the settlement was $275,000, which was "reduced to net proceeds to the claimant of $99,227.65" as a consequence of various deductions, including "the $80,450.00 employer escrow/lien." *Id.* The letter then went on to state:

> Based on the proposal which we discussed, my understanding is that the Special Fund would have the $99,227.65 treated as follows:
>
> 1. $55,000.00 free and clear to client with no setoff.
> 2. The remainder of $44,227.65 being treated as sums subject to setoff

with credit to the Special Fund taken prospectively for the next approximately 3 1/2 years. This prospective setoff includes the approximately $13,000 paid by the Special Fund to the claimant to date.

*Id.* at 46–47. The Board concluded that because the employer consented to the third-party settlement, knowing the January 13 letter stated that the $55,000 would be "free and clear to client with no setoff," that consent constituted a waiver of the employer's right to subject the $55,000 to a setoff.

The problem with this analysis is that the January 13, 1987 letter was nothing more than an agreement between the Special Fund and O'Brien with respect to the *Special Fund's* setoff rights. By its express terms, the letter recounted a "proposal" discussed between counsel for O'Brien and counsel for the Special Fund. It stated O'Brien's understanding "that *the Special Fund would have* the [net proceeds] treated as follows": $44,-227.65 subject to a setoff with credit to the Special Fund and "$55,000 free and clear to client with no setoff." *Id.* (emphasis added). The letter thus recounted what the Special Fund wanted with respect to its own setoff, and what the claimant agreed to about that setoff. The bottom line was that the claimant was to receive $55,000, free and clear as far as the Special Fund was concerned. The letter said nothing, however, about the *employer's* claims to that $55,000.

Two aspects of the letter's timing further confirm this reading. First, the letter recorded an agreement between O'Brien and the Special Fund in which the employer had not participated. Indeed, the OWCP concedes there is no evidence that counsel for the employer ever saw the January 13 letter before it was forwarded to him on January 30, 1987. Nor did the letter suggest that the agreement it contained was contingent upon subsequent agreement by the employer. Accordingly, O'Brien and the Special Fund could not have contemplated that they were agreeing to anything other than the disposition of their own respective claims. And the employer's counsel, upon reading the letter, would have had the same impression.

Second, O'Brien's counsel wrote the January 13 letter to the Special Fund just one day after writing the January 12 letter to employer's counsel. As discussed above, the January 12 letter sought to confirm an agreement that had been reached between O'Brien and her employer. The only point mentioned in that letter, however, was the employer's agreement to reduce its lien. Surely O'Brien's counsel would also have mentioned a waiver of the employer's credit if he had believed it to be covered by the agreement with the employer. And surely he would have mentioned it if he believed it covered by the document he was simultaneously negotiating with the Special Fund.

Both the language of the January 13, 1987 letter and its temporal context make clear that it was not intended to, and did not, waive the employer's right to its credit against future medical payments. As far as the employer was concerned, the agreement between O'Brien and the Special Fund left the majority of the net settlement proceeds, $55,000, free and clear of any setoff for the Fund—and thus fully available for the employer's setoff. Accordingly, Evans Financial had no reason to withhold its consent to the settlement, and no waiver can be deduced from the granting of that consent.

## C

■ The last document in the paper trail before the Board was a modification of the OWCP's original Compensation Order. On August 24, 1987, after being notified of the third-party settlement, the district director modified her previous award to reflect the terms of that settlement. The findings of fact in the Modified Compensation Order included the following:

1. That ... the employer ... and the Special Fund have paid compensation to the claimant for permanent total disability ... ; that as of March 5, 1987 the Director in [sic] behalf of the Special Fund approved and authorized a third party settlement of the action instituted against a third party allegedly liable for the injury, as a result of which the claimant received a gross amount of $275,000.00; that after pay-

ing an attorney's fee ... and court cost ... the amount of $80,450.00 has been placed in escrow to cover the employer's ... lien;

2. that the claimant realized a net recovery of $44,227.65 which shall be applied against the liability of the Special Fund....

J.A. 50–51. The employer was served with a copy of the order.

The Board concluded that the employer waived its right to a credit by failing to object to this order which, the Board noted, provided in paragraph 2 that the $44,227.65 "net recovery" was to be applied solely against the Special Fund's liability. But the employer's failure to object to the modified order cannot constitute a waiver because, once again, the employer had no reason to object. It had no reason to object because paragraph 2 of the order, like the January 13, 1987 letter, did nothing more than adjust the relationship between O'Brien and the Fund.

Paragraph 2 of the Modified Compensation Order correctly stated that $44,227.65 of O'Brien's recovery was to be applied against the liability of the Special Fund. It did not, however, say anything at all about the disposition of the remaining $55,000. Indeed, unlike the January 13 letter, it did not even say the $55,000 was to be "free and clear" to O'Brien. Moreover, although paragraph 1 of the order did mention the disposition of the employer's "lien," it made no mention of its credit. Yet, like counsel for the parties, the OWCP was well aware of the difference between the two. *See, e.g., Perry,* 29 Ben. Rev. Bd. Serv. at 59; *Kaye,* 28 Ben. Rev. Bd. Serv. at 251–52; *Treto,* 26 Ben. Rev. Bd. Serv. at 198–99.

In sum, we agree with the view of the dissenting Board member, who concluded that the Modified Compensation Order "simply does not address the issue now presented, viz. whether employer may offset future medical bills from the proceeds received by claimant." J.A. 31. And because nothing in the order compromised the employer's right to an offset, the employer had no reason to challenge it. There is, therefore, not a scin-

tilla of evidence to support the conclusion that Evans Financial waived its right to a credit against its liability for future medical expenses.

### III

 Finally, we consider Evans Financial's claim that it is entitled not only to a credit, but to complete relief from its obligation to make additional medical payments. The Board rejected that claim and so do we.

Section 33(g) of the LHWCA provides that if an employee settles with a third party for an amount less than the compensation to which the employee is entitled under the Act, and does so without prior written approval from her employer, the employee loses the right to any further recovery of compensation or medical benefits from the employer. *See* 33 U.S.C. § 933(g); *Morauer & Hartzell,* 439 F.2d at 552. The purpose of the section is to "prevent[] the claimant from acting unilaterally to the detriment of the employer by accepting less in settlement than it might be entitled to and thus reducing the employer's offset." *I.T.O. Corp.,* 954 F.2d at 242; *see Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 482–83, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992).

Evans Financial contends that O'Brien did something analogous here. It contends O'Brien entered into a settlement with the Special Fund that compromised the employer's right to offset its liability against her $55,000 net recovery. That, Evans Financial contends, violated the "spirit and purpose" of section 33(g) and caused it prejudice. The appropriate remedy, it urges, is complete relief from future liability.

But O'Brien violated neither the letter nor the spirit of section 33(g). She did not violate the letter of the law, because she fully complied with its express requirement that she obtain written approval prior to settlement. Her counsel's letter of January 30, 1987 notified Evans Financial of the settlement, and the employer signified its approval by signing the standard Form LS–33.

Nor did O'Brien violate the spirit of the section by compromising Evans Financial's right to a credit without its approval. In-

deed, such a conclusion would be inconsistent with our determination that Evans Financial still retains that credit. As we held above, the January 13, 1987 letter from O'Brien's counsel to the Special Fund was not intended to, and did not, effect a waiver of the employer's credit right. For that reason, the employer's right to a credit was not prejudiced. There is, therefore, nothing to support Evans Financial's claim to complete relief from liability for O'Brien's medical expenses.

### IV

For the foregoing reasons, we conclude that substantial evidence does not support the determination that Evans Financial waived its right to a $55,000 credit against its liability for O'Brien's medical expenses. At the same time, we reject the employer's claim that it should be relieved of all such liability. We grant the petition for review, vacate the decision of the Board including its affirmance of the award of attorney's fees, and remand the case for further proceedings consistent with this opinion.